## THE MORNING STAR.

## THE STORM KING.

(District Court, S. D. New York. January 2, 1926.)

1. **Towage** ⚫=11(1), 15(2)—**Tug not insurer, and loss of tow raises no presumption of fault against tug.**

Tug, undertaking to tow two deck lighters, was not an insurer, and mere loss of a tow raises no presumption of fault against tug.

2. **Towage** ⚫=11(1)—**Tug only bound to exercise reasonable skill and care in performance of tow.**

In libel against tug for loss of tow, *held*, that tug was only bound to bring to performance of its duty reasonable skill and care and such consideration as special circumstances of case demanded.

3. **Towage** ⚫=11(4)—**Evidence held to show master of tug made up tow in ordinary and customary method a prudent sea-going man would have employed under like conditions.**

In libel against tug for loss of one of two deck lighters which tug had undertaken to tow, *held*, that master of tug, in attaching hawser on after starboard bitt of lost lighter to a following lighter, had made up his tow in ordinary and customary method which a prudent sea-going man, engaged in coastwise towing under existing towing conditions, would have employed.

4. **Towage** ⚫=15(2)—**Burden on libelant to show negligence of tug caused loss of lighter.**

In libel against tug for loss of lighter, which tug had undertaken to tow, burden was on libelant to show that negligence of tug caused loss of lighter.

5. **Towage** ⚫=15(2)—**Evidence held to show loss of lighter was due to lighter's unseaworthiness.**

In libel against tug for loss of lighter, *held*, that libelant had failed to sustain burden of showing that loss was due to tug's negligence, but the evidence, on the contrary, showed loss was due to lighter's unseaworthiness.

In Admiralty. Libel by G. T. & W. B. Hastings, owners of the deck scow Morning Star, against the steam tug Storm King, her engines, boilers, etc.; the Tug Storm King Company, claimant. Libel dismissed.

Bigham, Englar & Jones, of New York City (Leonard J. Matteson, of New York City, of counsel), for libelant.

Hunt, Hill & Betts, of New York City, and Lewis, Adler & Laws, of Philadelphia, Pa. (George C. Sprague, of New York City, Otto Wolff, Jr., of Philadelphia, Pa., and Edna F. Rapallo, of New York City, of counsel), for claimant.

WINSLOW, District Judge. The tug Storm King undertook to tow two deck lighters, the Morning Star and the Willie, from

New York to Norfolk, starting from New York on December 13, or the early morning of December 14, 1919. The first lighter in the tow was the Morning Star, which was attached to the tug by a 200-fathom hawser and a bridle, made fast to her forward corner bitts. The Willie was attached to the Morning Star by a 180-fathom 8-inch hawser running aft of the Morning Star's starboard aft corner bitt, and attached to the forward corner bitts of the Willie.

At 8 p. m. on December 16, during the master's watch on the tug, the lights of the Morning Star went out. There was no answer from the scowman on the Morning Star to signals blown on the whistle. The night was clear, and the loom of the lighter could be seen from the tug. The tug continued on her course until 6:30 a. m. on December 16, when it was observed that the Morning Star was awash, whereupon the captain turned on his hawser and made an investigation. A lifeboat was sent, but could not find the scowman. The Morning Star was badly broken up and awash, and the master of the tug concluded it would be impossible to tow her to Norfolk without menacing the lighter Willie, which was in good condition; so the Morning Star was let go and the lighter Willie was towed to Norfolk, arriving there in safety.

This suit was instituted some 2½ years after the loss of the lighter. The only questions, it seems to me, which it is necessary for the court to consider, are whether the damage to the Morning Star was due to the negligence of the master of the tug in making up his tow, or whether the cause of the damage was the unseaworthiness of the Morning Star.

[1, 2] The tug was not an insurer, and the mere loss of the tow raises no presumption of fault against the tug. While it is true that the lighter in question was not of a type used for towing at sea, except when being towed from one port to another, the tug was only bound to bring to the performance of its duty reasonable skill and care, and, such consideration as the special circumstances of the case demanded.

[3] The libelant contends that the attaching of the hawser on the after starboard bitt of the Morning Star to the Willie caused a crisscross strain on the Morning Star, and that this faulty towing and additional strain resulted in her damage. There was no center bitt on the Morning Star, but only bitts at the corners. Several witnesses have testified on behalf of the libelant as to other methods of attaching hawsers, which they say would have relieved the strain; but they are far from agreement as to the best way, except that they seem to agree that the method in use was not the best. On the other hand, a number of reputable witnesses, who have impressed the court with their ability and honesty, have testified that the method used was the best possible; that the use of a bridle, for illustration, attached to the two corner bitts on the after part of the Morning Star, from which the hawser could have been run to the Willie, would have subjected the Morning Star to a series of jerks, which would have put additional strain upon it. A naval architect of ability has testified as to the diffusion of the strain by the method employed in this case. The court is convinced, after listening to the witnesses and studying the entire record, that the burden resting upon the libelant has not been sustained. I am convinced that the master of the Storm King made up his tow in the ordinary and customary method, which a prudent, sea-going man, engaged in coastwise towing under existing towing conditions, would have employed.

[4, 5] The burden is upon the libelant to show that the negligence of the Storm King caused the loss of the Morning Star. Not only is this burden not sustained, but the evidence in the case leads me to the conclusion that the loss was due to unseaworthiness of the Morning Star. The libelant's witness, who examined the wreck when awash, said that her bitts apparently were intact. The fact that the vessel leaked so badly and broke up, without apparently disturbing the bitts to which the hawser was attached, indicates to me that the vessel was not seaworthy as to her hull at the beginning of the voyage, and this is my conclusion.

Libel dismissed.