**CURTIS BAY TOWING CO. OF VIRGINIA, Inc. v. SOUTHERN LIGHTERAGE CORP.**

**THE J. ALVAH CLARK.**

**THE COVERED WAGON.**

**No. 6445.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 10, 1952.

Decided Nov. 10, 1952.

10, was decided in 1944 but does not discuss the 1938 amendment.

John W. Oast, Jr., Norfolk, Va., for appellant.

Edward R. Baird, Jr., Norfolk, Va., (Baird, White & Lanning and George M. Lanning, Norfolk, Va., on brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and WILLIAMS, District Judge.

DOBIE, Circuit Judge.

This is an appeal from an interlocutory decree of the United States District Court for the Eastern District of Virginia, awarding damages to the libelant, Southern Lighterage Corporation, for the sinking of its gravel laden scow, Covered Wagon, in the James River. The sinking is alleged to have been caused by the negligence of the respondent, Curtis Bay Towing Company, in failing to exercise reasonable care in the protection of the scow.

On May 2, 1951, at Dutch Gap on the upper James, the respondent's tug, J. Alvah Clark, picked up five unmanned scows of the libelant, each loaded with gravel, for towing down river to Norfolk, Virginia. The scows were the ordinary square-end type, with a slightly raked hull, 113 feet long, 30 feet wide and 9 feet in depth. The tow had been made up by libelant, in tandem and coupled at 4 feet, with the Covered Wagon second in line.

When the tow departed from Dutch Gap at 7 P.M., the scow in question had a freeboard of 3 feet 6 inches at either end and about 2 feet 6 inches amidships. Nothing untoward happened until 5:30 in the afternoon of the next day, when the first mate of the Clark noticed that the Covered Wagon had acquired a severe list on her starboard side forward, leaving a freeboard of only about 10 inches at that point. The attention of the tug's captain was directed to this condition and he immediately put about, boarded the scow, found that she was taking water through her seams, and set a pump against the leak. At this time it was raining, the tide was flooding and the wind was blowing adversely.

After starting the pump, the members of the crew of the Clark returned to the tug and she reassumed her position at the head of the flotilla to continue her trip. Just then a heavier rain fell, the pump stopped, and the tug once again put about to come alongside the scow. Before the tug reached the scow, however, the tug's propeller fouled in the towing hawser. With the aid of another vessel in the vicinity, the tug finally reached the Covered Wagon.

The pump was restarted and, as the Clark was then without power, she called a sister tug, the Dixie, for assistance. The Dixie arrived in about thirty minutes but the scow capsized while her crew members were attempting to put another pump aboard. After marking the scow with an appropriate light, the Dixie took the remainder of the flotilla in tow, including the still helpless Clark, and brought it to its destination.

The District Court held that the Clark failed in its duty to devote reasonable care to the protection of the Covered Wagon to prevent her foundering and that this want of care was the proximate cause of her loss. We are asked to review the correctness of this decision.

 The law governing such situations is well settled. In a contract of towage, the owner of the tow is responsible for the seaworthiness of his vessel and the owner of the tug for its safe navigation. The Radnor, D.C.Md. 21 F.2d 982; The Lizzie M. Walker, 4 Cir., 3 F.2d 921. The owner of the tug is not an insurer against whom the mere loss of the tow raises a presumption of fault, Stevens v. The White

City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699; The Lapwing, 5 Cir., 150 F.2d 214; but he is obligated to perform his duties with such reasonable care and maritime skill as prudent navigators usually employ in similar undertakings, and with such consideration as special circumstances may require. The Admiral, 5 Cir., 84 F.2d 616; The Director, 4 Cir., 21 F.2d 47; The Morning Star, D.C.S.D.N.Y., 10 F.2d 538. Applying these principles to the instant case, we think that the District Court was correct in its decision.

■ When the precarious condition of the Covered Wagon was first noticed, she had suffered a diminution of some 85% of her freeboard and the danger of losing her was imminent. Upon boarding her, the tug's crew members could hear water streaming into her bilges, and her cargo of gravel was even then trickling overboard. Unless her trim could be promptly restored or greatly improved, good seamanship demanded that she be beached. It would not have been a difficult task to remove the Covered Wagon from the tow, nor would such action have materially increased the danger to the remaining scows. Nearby shoals and shores readily lent themselves to the success of such a venture. Notwithstanding, the tugmaster installed only one pump on the sinking scow and, without standing by alongside for a sufficient time to ascertain its efficacy, resumed the towing in the face of rain, a flood tide and an adverse wind. Such an attempt could only serve to drive the scow deeper into the water, widen her seams, increase her floodage, and shorten her rapidly dwindling life. This is especially true in view of the fact that the scow's losing freeboard was on her leading edge.

While there is some evidence to support respondent's contention that the Covered Wagon was unseaworthy at the commencement of the voyage, this condition was not a concurring or contributing proximate cause of her fate. True as it may be that the scow's infirmities created and fostered her peril, there was still ample opportunity for the master of the Clark to forestall her disaster. The respondent further contends that there was sufficient time for the scow to have been beached after the pump stopped and the tug put about for the second time.

Indeed, respondent suggests that this action in all likelihood would have been taken had not the tug's propeller become fouled in the towing hawser, thereby rendering it helpless. Even if we assume the validity of this contention, there is evidence tending to show that the hawser was very ineptly handled on this occasion, that slack was allowed to develop in it, and the tug's engines were not shut down so that the slack could be taken in.

We are of the opinion, however, that the Covered Wagon was "in extremis" when her list was first discovered, and that the sole proximate cause of her loss was the failure of the tugmaster to ascertain whether she could be promptly righted and to beach her if she could not, hence we deem it unnecessary to develop this point. The foregoing conclusion likewise obviates consideration of respondent's suggestion that the damages be divided upon the ground of common fault. The Perth Amboy No. 4, 2 Cir., 135 F.2d 404; Henry DuBois Sons v. Penn R. R., 2 Cir., 47 F.2d 172.

Accordingly, the decree of the District Court is affirmed.

Affirmed.