### DERBY COMPANY, Ltd.

v.

### A. L. MECHLING BARGE LINES, INC., Ramsey, Scarlett & Company, Inc., Central Soya Company, Superior Boat Works, Superior Towing Company, Inc., and the M/V SUPERIOR, her engines, tackle, etc.

No. 749.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Sept. 7, 1966.

William S. Stone, Rene S. Paysse, Deutsch, Kerrigan & Stiles, New Orleans, La., for libelant.

J. Y. Gilmore, Jr., James A. George, Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for A. L. Mechling Barge Lines, Inc.

George W. Healy, III, James H. Roussel, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Ramsay, Scarlett & Co.

Donald A. Lindquist, Chaffe, McCall, Phillips, Burke, Toler & Hopkins, New Orleans, La., for Central Soya Co., Inc.

George B. Matthews, Charles Lugenbuhl, Clayton J. Swank, III, Lemle & Kelleher, New Orleans, La., for Superior Boat Works.

Alfred M. Farrell, Jr., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., Theodore C. Robinson, McCreary, Hinslea, Ray & Robinson, Chicago, Ill., for Aiple Towing Co., Inc.

WEST, District Judge:

This case involves the sinking of two barges, the MBL 217 and the IBL 83, with an attendant loss of cargo, in the Mississippi River a short distance north of Vicksburg, Mississippi, at approximately Mile 437. The sinking occurred on March 26, 1963. The two barges were part of a tow of ten barges being pushed up river by the M/V Superior. The MBL 217 was owned by A. L. Mechling Barge Lines, Inc. and was, at the time of the sinking, laden with a cargo of ferromanganese belonging to libelant, Derby Company, Ltd. Both the barge and the cargo were lost at the time of the sinking. Aiple Towing Company, Inc. was owner of the Barge IBL 83 and bailee of the cargo aboard. Superior Boat Works, Inc. was the owner of the M/V Superior.

Libelant, Derby, brought this libel against A. L. Mechling Barge Lines, Inc., as the owner of the MBL 217; Ramsay, Scarlett & Co., Inc., as the stevedoring concern whom libelant contends was responsible for the manner in which the cargo was loaded aboard the MBL 217; Central Soya Company, Inc., who, under contract with Mechling and Aiple, arranged for the assembly of the tow for the northward movement from Baton Rouge, Louisiana; the Superior Boat Works, Inc., as the owner and operator of the M/V Superior; and the M/V Superior, her engines, tackle, etc., for recovery of the value of its lost cargo.

Aiple Towing Company, Inc. intervened as a libelant against all respondents, claiming damages for the loss of the cargo aboard the barge IBL 83 and for damages to the barge. (The MBL 217 was not raised after the sinking but the IBL 83 was raised and later repaired.)

Claims and cross-claims were then made by all of the various respondents against each other for indemnity and/or contribution, but since the decision to be rendered herein makes a consideration of these various cross-claims unnecessary, they will not be set forth in detail. After considering all of the evidence adduced at the trial of this case, and after considering the briefs and arguments of counsel the Court concludes that the sole responsibility for the sinking of these barges rests with A. L. Mechling Barge Lines, Inc., and in connection therewith the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The M/V Superior is a river towboat approximately 130 feet long, 37 feet wide, pilothouse controlled, and powered by two 1600 H. P. engines. She is equipped with radar, radio, walkie-talkies and marine telephone. At the time of the sinking of the barges here involved, Captain Lidle Golden was the Master of the Superior and Captain Robert E. Geary was the Pilot and Relief Master.

2. The Superior left Baton Rouge, Louisiana, on March 23, 1963, with a tow consisting of ten laden barges, made up in two strings of five barges each ahead of the Superior. The lead barge on the port string was the MBL 476 and the lead barge on the starboard string was the MBL 217. Directly astern of the MBL 217 was the IBL 83. The MBL 217 was owned by A. L. Mechling Barge Lines, Inc. and was laden with a cargo of ferromanganese owned by libelant, Derby Co., Ltd. The IBL 83 was owned by Aiple Towing Co., Inc. and was laden with a cargo of fertilizer of which Aiple was bailee. Each of these barges were of the covered hopper type, measuring approximately 190 feet long and 35 feet wide.

3. This tow, including the MBL 217 an and the IBL 83, had been assembled by Central Soya Company, Ltd. under towing agreements with A. L. Mechling Barge Lines, Inc. and Aiple Towing Company, Inc. for a northbound movement up the Mississippi River from Baton Rouge, Louisiana. Central Soya, for the purpose of this movement, had the M/V Superior, fully found, under charter.

4. Libelant, Derby Company, Ltd., had had a standing contract since March of 1962 with A. L. Mechling Barge Lines, Inc. whereby Mechling transported ore owned by Derby, and it was pursuant to this arrangement that the MBL 217 laden with ore was being moved.

5. Ramsay, Scarlett & Co., Inc. is the stevedoring company who loaded the ore aboard the MBL 217 at its Burnside, Louisiana facility prior to the commencement of the northbound movement here involved. The loading was done on or about March 19–20, 1963.

6. The IBL 83 was under demise to Aiple Towing Co., Inc. and was laden with fertilizer for which a bill of lading had been issued by Aiple to Armour Agricultural & Chemical Company.

7. The tow as thus made up proceeded northward and at approximately 12:30 p.m. on March 26, 1963, in the vicinity of Young's Point Light at about Mile 437 A.H.P., both the MBL 217 and the IBL 83 sank.

8. Salvage operations resulted in the recovery of a part of the cargo of the MBL 217, but the barge itself was not salvaged. Barge IBL 83 was raised and repaired but her cargo was lost.

9. All barges in the tow were thoroughly inspected and checked before leaving Baton Rouge for the up-river voyage, and the MBL 217 was found to be free of water except for a slight amount, possibly one inch, in the port wing tank forward. This was not an unusual amount of water to be found in one of the wing tanks.

10. As the tow proceeded upstream, all barges were periodically checked, every six hours, by the crew of the Superior. Soundings in each barge were taken at 6:00 a.m. and 6:00 p.m., and no water was discovered in any of the barges prior to the time of the sinking.

11. The tow proceeded upstream without incident until it reached approximately Mile 437 when, as it was negotiating a bend in the river, the lead barge in the starboard string, the MBL 217, suddenly, and without warning, dove and sank. As she was sinking, the lead barge in the port string, the MBL 476, broke loose from its rigging, topped around, and floated downstream. She was recovered a mile or two downstream. When the bow of the MBL 217 went under, her stern did not rise up appreciably and the IBL 83, directly astern, ran up on her stern, tearing a large hole in the bottom of the IBL 83 about 40 feet aft of her bow, causing her to sink also. The barges sank in about 17 feet of water covering a sand bar.

12. The Captain of the Superior had no warning of any kind prior to the sinking that his tow was in any danger whatsoever. From the time he first saw water coming over the bow of the MBL 217 until she sank was a matter of less than three minutes.

13. Prior to passing over the sandbar over which there was about 17 feet of water, the Superior and her tow had been moving in water approximately 34 feet deep. For some time prior to reaching the sandbar, and up to the time of the sinking, the Superior and her tow had been bucking a current of about 7.4 miles per hour, and her headway over the ground was only about two miles per hour. There was no slack water in the vicinity of this casualty. There was no evidence to support a finding that the tow had emerged from an eddy at the time of the sinking, but on the contrary, the evidence is conclusive that the tow had been bucking in a rather heavy, constant current for quite some time prior to and at the time of the sinking.

14. When the Master of the Superior first saw the bow of the MBL 217 awash, he immediately reversed his throttles from full ahead to full astern. He lost headway almost immediately but the MBL 217 never returned to the surface.

15. At the time of the sinking the Superior and her tow were well in the channel, outside the buoys marking deep water, and she had ample water, at least 17 feet, under her and her tow.

16. While there was much evidence introduced concerning diving character-

istics of barges in tows, and much theory advanced concerning various things that might cause the head barge in a tow to dive, there was a complete absence of any proof that any of these theories were applicable to the present case. For example, it was testified that the head barge in a tow might have a tendency to dive, or become awash, if the tow suddenly moves from slack water into heavy current, or if the tow suddenly moves from deep water into extremely shallow water. But the evidence is overwhelming to the effect that this tow did not move from slack water into heavy current, nor did it move into water shallow enough to cause the diving effect described by some witnesses. While each of the several river pilots who testified indicated that they had, at one time or another, experienced the head barge in a tow diving, nevertheless, everyone of them testified that in no instance had they seen such a barge, if it were seaworthy, fail to return to the surface when, as in this case, the tug was backed down. They testified that usually, if the barge is seaworthy, it will return to the surface after diving without the necessity of backing the tug down, but in every case with which they were familiar, the seaworthy barge, after diving, returned to its proper position in the water after backing the tug down.

17. The testimony also produced speculation that water might have come in over the bow of the MBL 217 and leaked into the cargo box through hatch covers and manhole covers which were either improperly closed or without the proper watertight gaskets, thus filling the barge with water and causing it to sink. This testimony is quite unimpressive since it simply is not in accord with other proven facts. There was no evidence that any excessive amount of water was taken over the deck of the barge until moments before she sank. The evidence shows beyond doubt that the barge did not gradually take on water and sink, but that, on the contrary, whatever caused it to sink happened suddenly. But even if this theory were correct, the fact that the

hatch covers and manhole covers were not watertight would have created an unseaworthy condition for which Mechling Barge Lines would be liable.

18. There was also other evidence which, in the Court's opinion, established the fact that this barge was unseaworthy. On her prior trip downriver she leaked and damaged some 750,000 bushels of grain. Following that incident she was beached and repairs were made to her rake and to her cargo box. There was substantial evidence introduced at the trial of this case to support the proposition that these repairs were both improperly, and inadequately made. The evidence strongly indicates that this barge was unseaworthy before the present voyage began due to having been on prior occasions improperly loaded and overstressed.

19. The evidence preponderates in favor of the conclusion that the Barge MBL 217 suddenly developed a sizable leak below the water line and sank. In order for her to go down as quickly as she did, she simply had to take on a tremendous amount of water in a very short period of time. The evidence simply does not indicate any way that such an amount of water could have been taken on so quickly except by the development of a sizable hole or break in the barge somewhere below the water line. There is ample evidence to support this theory.

20. There is absolutely no evidence whatsoever to indicate that the Captain or crew of the M/V Superior were in any way negligent. There was not a single river pilot who said, in the final analysis, that he would have done anything different from that which the Captain of the Superior did prior to and at the time of the sinking. There was simply no evidence of any kind that the unseaworthy condition of the Barge MBL 217 was or could have been known to the Captain of the Superior prior to the moment she became awash and sank.

21. There was no evidence to support any allegation of negligence on the part of the stevedoring company, Ramsay,

Scarlett & Co., Inc., nor was there any evidence to support a charge of negligence against Central Soya Company or Aiple Towing Co., Inc.

22. The same unseaworthy condition which caused the sinking of the MBL 217 was the proximate cause of the sinking of the Barge IBL 83.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this libel and venue is properly laid in the Eastern District of Louisiana.

2. In a contract of towage the owner of the barge is responsible for the seaworthiness of his vessel, and the owner of the tug or towing vessel is responsible for its safe navigation. While the owner of the tug is not an insurer of his tow, he is obligated to perform his work in a reasonable and prudent manner, using such care and skill as prudent navigators usually employ in similar situations. Curtis Bay Towing Company of Virginia, Inc. v. Southern Lighterage Corp., 200 F.2d 33 (C.A.4 1952). The Court finds that as a matter of law the operator of the M/V Superior did, in this case, use the required skill and care in the navigation of his vessel.

3. A vessel such as the Barge MBL 217 is presumed to be unseaworthy when she sinks under normal conditions and in the absence of proof that she was improperly handled. The Senator Rice, 15 F.2d 882 (E.D.N.Y.1925), affirmed 15 F.2d 883 (C.A.2 1926); Southern Lighterage Corp. v. The J. Alvah Clark et al., 103 F.Supp. 580 (E.D.Va.1952), affirmed Curtis Bay Towing Co. of Va. v. Southern Lighterage Corp., 200 F.2d 33 (C.A.4 1952); Metropolitan Coal Co. v. Howard, 155 F.2d 780 (C.A.2 1946). This proposition of law is applicable here. There is no evidence of improper handling of the MBL 217 at the time of the sinking, nor is there any evidence that she was encountering conditions other than she would be expected to encounter on such a voyage. Thus, in the absence of proof to the contrary, it must be concluded that her sinking was a direct result of her unseaworthiness.

4. The Barge MBL 217 being unseaworthy, and this unseaworthiness being the proximate cause of its sinking, with the attendant loss of part of her cargo, her owner, Mechling Barge Lines, Inc., is, as a matter of law, liable to libelant, Derby Company, Ltd., for the loss of cargo. Also, since the unseaworthy condition of the MBL 217 was the direct and proximate cause of the sinking of the Barge IBL 83, her owner, Mechling Barge Lines, Inc., is also liable to Aiple Towing Co., Inc. for damages to the IBL 83 as well as for the loss of cargo aboard that barge.

5. Since Mechling's contract with Derby for transportation carried with it an implied warranty of seaworthiness of the barge in which the cargo was to be transported, privity and knowledge of the unseaworthy condition which existed is imputed to Mechling and thus Mechling is not entitled to limit its liability to the value of the Barge MBL 217. The Fred Smartley, Jr., S. C. Loveland Co., Inc. et al. v. Pennsylvania Sugar Co., 108 F.2d 603 (C.A.4 1940); Pendleton v. Benner Line, 246 U.S. 353, 38 S.Ct. 330, 62 L.Ed. 770 (1918). Also, since the contract between Mechling and Derby does not contain an express, plain, unequivocal waiver of seaworthiness, Mechling cannot be relieved of full liability for all loss occasioned by the unseaworthiness of its barge, the MBL 217. Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955); Dixilyn Drilling Corp. v. Crescent Towing & Salvage Co., 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78 (1963).

6. For the reasons hereinabove stated, judgment will be rendered herein in favor of Derby Company, Ltd., and against Mechling Barge Lines, Inc., for the full amount of damages occasioned by the sinking of the MBL 217, and in favor of Aiple Towing Company, Inc., and against Mechling Barge Lines, Inc., for the damages occasioned by the sinking of the IBL 83. All other claims, counter-claims, and cross-claims presented in this case will be dismissed.