KENNY MARINE TOWING, INC., Plaintiff,

v.

M/V JOHN R. RICE (ex: M/V MISTER DUFRENE), her engines, tackle, apparel, etc., in rem, Norman J. Frederic, Inc., Molly Lee Towing Co., Inc., American Tugs, Inc., Defendants.

JIM WALTERS RESOURCES, INC., A Corporation, Plaintiff,

v.

EEI ENERGY, INC., A Corporation, Kenny Marine Towing, Inc., A Corporation, Molly Lee Towing Company, Inc., A Corporation, Defendants.

Civ. A. Nos. 81–2444, 82–864.

United States District Court, E.D. Louisiana.

Feb. 28, 1984.

Joseph P. Tynan, Therese B. Forrester, New Orleans, La., for plaintiff Kenny Marine Towing, Inc.

Bettye A. Barrios, Clayton G. Ramsey, Washington, D.C., for Molly Lee Towing Co., Inc. and American Tugs, Inc.

James K. Carroll, New Orleans, La., for Jim Walters Resources, Inc.

CASSIBRY, District Judge.

On November 21, 1980, a coal-carrying barge sank near the confluence of the Black Warrior and Tombigee Rivers in the state of Alabama. Out of this event arose two civil actions. The barge charterer, Kenny Marine Towing, Inc. (Kenny Marine), brought suit against the towboat owner and operator, Molly Lee Towing Co., Inc. (ML Towing), for negligent handling of the tow. Independently, Jim Walters Resources, Inc. (JW Resources), the owner of the coal cargo, instituted its own action against all the parties involved in the transport of the coal—the shipper, EEI Energy, Inc. (EEI), Kenny Marine, and ML Towing. Kenny Marine cross-claimed against EEI and ML Towing and filed a third-party complaint against American Tugs, Inc. as the party responsible for the navigation and operation of the tow, the M/V MISTER DUFRENE.[1]

These suits were consolidated and the parties stipulated to the amount of damages sustained by the cargo owner, JW Resources. With that question removed from the case, trial was had on the issue of liability alone, before the court, sitting without a jury. At the conclusion of the evidence the court, for the reasons set out below, rendered judgment against the barge owner, plaintiff Kenny Marine Towing, Inc.

## FINDINGS OF FACT

1. At all pertinent times, Kenny Marine Towing, Inc. was the bareboat charterer and owner *pro hac vice* of the Barge SCNO–1416.

2. At all pertinent times, Molly Lee Towing Co., Inc. and American Tugs, Inc. were the owners and operators of the towboat, the M/V MISTER DUFRENE.

3. At all pertinent times, Jim Walters Resources, Inc. was the owner of the cargo of coal carried aboard the Barge SCNO–1416.

4. Kenny Marine and JW Resources entered into a contract of affreightment for the carriage of JW Resources' coal aboard the Barge SCNO–1416.

5. Kenny Marine contracted with American Tugs to tow Barge SCNO–1416 from Port Osborne, Alabama to Mobile, Alabama.

6. Barge SCNO–1416 was a raked, steel-hulled, open hopper barge built in 1958. It had been in service for 22 years at the time of its sinking and was approaching the end of the usual life span of barges of its class.

7. On November 18, 1980, the Barge SCNO–1416 was loaded at Port Osborne, Alabama with 1350 tons of coal, to a draft of approximately 8 feet. No evidence of improper loading was presented to the court.

8. The Barge SCNO–1416 was placed in the tow of the M/V MISTER DUFRENE along with three other barges. The barges

---

**1.** EEI is presently in Chapter 11 bankruptcy. All action against it has been stayed and counsel representing EEI in this litigation has withdrawn as counsel of record.

were made up two long and two wide, with the Barge SCNO–1416 at the head on the port side.

9. The M/V MISTER DUFRENE and its tow departed Port Osborne on November 18, 1980 and proceeded down the Black Warrior River toward Mobile.

10. The M/V MISTER DUFRENE encountered dense fog on the journey and tied up to trees along the river bank on at least two occasions during the voyage.

11. With the exception of the times the tow came up against the bank to tie up when fogbound, the voyage downriver was uneventful and no groundings or collisions occurred.

12. On November 21, 1980, at approximately Mile 217 of the Black Warrior River near its confluence with the Tombigbee River, Barge SCNO–1416 buckled and began to sink. In order to keep the channel clear, the crew of the M/V MISTER DUFRENE pushed the Barge SCNO–1416 to the left bank of the Black Warrior and beached it. The barge sank, stern first, with its bow protruding.

13. On November 25, 1980, divers examined the barge and reported it to have buckled amidships.

14. One day previously, the barge was examined by marine surveyors Daniel Chewning and David Speed. The two surveyors found no fresh fracture marks or indentations on the hull to indicate a recent collision or grounding.

15. In October 1983, the surveyors conducted ultrasonic tests on the hull to gauge the thickness of its steel plating. Pitting of the hull, however, made measuring its thickness difficult and caused the reliability of any single reading to be in doubt. By dint of averaging readings, the surveyors were able to arrive at measurements for eight separate points on the hull. Five of the readings measured the steel plate's thickness as one-quarter of an inch or better; three readings revealed thicknesses of less than one-quarter of an inch.

16. When originally constructed, the Barge SCNO–1416 had three-eights of an inch thick plating. Wasting beyond 20% of original thickness ordinarily calls for renewal of the plate. The gaugings taken by the two surveyors indicate wastage ranging from 20% to nearly 40% in the thickness of the plating.

*Conclusions of Law*

1. The court has jurisdiction over this matter under its admiralty and maritime jurisdiction, 46 U.S.C. § 740; 28 U.S.C. § 1333; and Rule 9(h) of the Federal Rules of Civil Procedure.

2. Kenny Marine had a contract of towage with American Tugs and ML Towing for the transportation of the Barge SCNO–1416 from Port Osborne, Alabama to Mobile, Alabama by the M/V MISTER DUFRENE. In a contract for towage, the owner of the barge warrants that the vessel offered for towage is sufficiently staunch and strong to withstand the ordinary perils to be encountered on the voyage. *Massman Const. v. Sioux City & N.O. Barge Lines,* 462 F.Supp. 1362, 1368 (W.D.Mo.1979); *Consolidated Grain & Barge Co. v. Marcona Conveyor,* 716 F.2d 1077, 1081 (5th Cir.1983). If the tow is unseaworthy by reason of weakness, decay, or leaks and such defects are not obvious to the master of the tug, the tug will be absolved from responsibility for such unseaworthiness if it is the cause of the damage complained of. This principle is commonly referred to as the warranty of seaworthiness. *Massman,* supra, at 1368.

The owner of the tug may rely on the warranty and is under no duty to make a detailed inspection of the vessel either prior to or during the voyage itself. The tug is entitled to assume that the vessel it is towing is seaworthy. *Massman,* supra, at 1368–69.

3. While the owner of the tug is not an insurer of his tow, he is obligated to use such care in the performance of his work as a prudent navigator would under similar circumstances. *Stevens v. The White City,* 285 U.S. 195, 202, 52 S.Ct. 347, 350, 76 L.Ed. 699, 703 (1932); *Derby Company v. A.L. Mechling Barge Lines, Inc.,*

258 F.Supp. 206, 211 (E.D.La.1966), *aff'd*, 399 F.2d 304 (5th Cir.1968).

■ 4. Unless the tow can establish a failure on the part of the tug to meet this standard of care, the tow simply cannot recover. *Stevens*, 285 U.S. at 202, 52 S.Ct. at 350; *Massman*, 462 F.Supp. at 1369. The burden of proof as to the negligence of the tug is on the tow throughout. Negligence must be shown by proof of specific acts of negligence or proof of a failure to exercise reasonable maritime skill unaided by any presumption of law. *Id.* at 1374.

5. Kenny Marine contends that negligence on the part of defendants' tow, the M/V MISTER DUFRENE, caused the break-up of the Barge SCNO–1416. Kenny Marine's theory of negligence is that, in the course of its voyage downriver, the barge was brought up against the riverbank with sufficient force to cause the barge's hull to split amidships. Kenny Marine's survey expert, Daniel Chewning, testified that as the water flooded into the barge's tanks, the added weight caused the barge to buckle and sink.

A little loose mud is the firmest ground Kenny Marine has for its theory. The evidence shows that there was dried mud on the bow and deck of the barge. Mr. Chewning offered it as his opinion that the presence of this mud on the barge resulted from a collision of the barge with the riverbank. In support of his opinion, Mr. Chewning testified that he had traveled a mile or two upriver from where the barge sank and discovered a long, large scrape on the bank. At this spot, there were trees with broken and exposed roots. It was Mr. Chewning's conclusion that a loaded barge had recently struck the bank while in tow and that a visual comparison of the dirt and sticks on the deck of the Barge SCNO–1416 with the trees and mud at this section of the riverbank indicated that it was the Barge SCNO–1416 which had struck the bank at this point.

In contradiction to this reading of an unbaked mud record, defendants ML Towing and American Tugs offered the testimony of the crew of the M/V MISTER DUFRENE. The crew of the tow testified that the vessels were fogbound on at least two occasions during the voyage down the Black Warrior River. When fog made travel inadvisable, the tug, with its barges, pushed up against the bank. A crew member stationed on the bow of one of the forward barges would tie up to a tree on the river's edge. Overhanging trees, sections of the bank itself, minor cave-ins, and the earth picked up by the crew member's boots as he jumped from barge to bank and back again all could have contributed to the presence of mud, leaves and twigs on the deck of the barge.

As to the gouge discovered by Kenny Marine's expert and alleged to represent the point of impact between barge and bank, plaintiff has failed to offer any evidence other than Mr. Chewning's testimony which would identify this mark as caused, first, by a barge, second, by Barge SCNO–1416, and third, by Barge SCNO–1416 hitting with force sufficient to cause enough damage to split the barge open and lead to its buckling and sinking. Mr. Chewning concluded that it was the Barge SCNO–1416 which had struck the bank based on the mud and twigs he saw on the barge. No sampling of the mud on the barge was undertaken to compare it with the mud of the gouged riverbank. No evidence was offered that the Barge SCNO–1416 was the only barge to pass this point on the Black Warrior on or about the date of the accident.

On cross-examination, Mr. Chewning admitted that, in his experience, if a barge struck a bank with enough force to cause it to buckle, it would buckle on the spot. The Barge SCNO–1416 did not buckle on the spot. David Speed, defendants' survey expert, testified that a barge damaged as plaintiff has suggested the Barge SCNO–1416 was, would sink but without buckling. Moreover, the bow of the barge exhibited neither an indentation nor a fracture as would be expected if it had struck the bank with force. Furthermore, if the barge had struck the bank hard enough to cause it to break apart, there would normally be some

mark or indentation on its stern from the pile-up of the other barges which would have followed. No such marks were found nor did any of the other barges report any damage due to the striking.

■ Where, as here, a barge in tow sinks in calm water for no immediately ascertainable cause, in the absence of proof of improper handling, the barge's sinking is presumed to be a direct result of its unseaworthiness. *Consolidated Grain*, 716 F.2d at 1081; *Derby*, 258 F.Supp. at 211. The owner of the barge has the burden of establishing negligence on the part of the handler. *Continental Grain*, 716 F.2d at 1082; *Massman*, 462 F.Supp., at 1369. Having failed to prove to the court any specific acts of negligence of the M/V MISTER DUFRENE, its master or crew, or a failure by them to exercise reasonable maritime skill, Kenny Marine, the owner of Barge SCNO–1416, cannot recover.

6. Presumptions aside, the defendants presented evidence to call into question the seaworthiness of Barge SCNO–1416. The barge was 22 years old when it took on its last load of coal and had reached an age approaching the limits of the usual useful life of a barge of this type.

In view of this fact, the parties' survey experts undertook to measure the thickness of Barge SCNO–1416's steel hull. Although pitting of the steel surface impeded their efforts and affected the accuracy of their gaugings, the experts' testimony agreed that of the eight readings taken, three showed the hull's thickness to be less than one-quarter of an inch. The original thickness of the hull was three-eighths of an inch. The experts testified that wearing away of the hull in excess of 20–25% of its original thickness or, in this case, to less than one-quarter of an inch called for replacement of the steel plates.

■ 7. Based on a review of all the evidence presented, the court concludes that plaintiff Kenny Marine has failed to establish by a preponderance of the evidence that the loss of the Barge SCNO–1416 was proximately caused by defendants' negligence. Neither specific acts of

negligence nor a failure to exercise reasonable maritime skill on the part of the master or crew of defendants' tug, the M/V MISTER DUFRENE, have been shown. Not only has plaintiff failed to carry its burden of proof, but the greater weight of the evidence convinces the court that the Barge SCNO–1416 buckled and sank as a direct result of its own unseaworthiness, to wit, the thinness of its plating in relation to the weight of the cargo it carried.

8. Accordingly, judgment will be entered in favor of defendants American Tugs, Inc. and Molly Lee Towing Co., Inc. and against plaintiff Kenny Marine Towing, Inc.

■ 9. Where the unseaworthiness of the barge is the proximate cause of its sinking, the barge owner is, as matter of law, liable for the loss of the cargo aboard the barge. *Derby*, 258 F.Supp. at 211. The Barge SCNO–1416 being unseaworthy and its unseaworthiness being the proximate cause of its sinking, with the attendant loss of the major portion of its coal cargo, the cargo owner, Jim Walters Resources, Inc., is to recover the stipulated damages of $25,000.00 from Kenny Marine Towing, Inc.

So ordered.