## ASSOCIATED DREDGING COMPANY, INC.

v.

## CONTINENTAL MARINE TOWING COMPANY, INC., et al.

### Civ. A. No. 83–5246 Section "I" (4).

United States District Court,
E.D. Louisiana.

Sept. 19, 1985.

---

Francis J. Barry, Deutsch, Kerrigan & Stiles, New Orleans, La., for plaintiff.

Joseph T. Tynan, Poindexter, Bowers & Tynan, New Orleans, La., for defendants.

---

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MENTZ, District Judge.

The plaintiff, Associated Dredging Company, Inc. (Associated), filed this lawsuit against Continental Marine Towing Company, Inc., Real Towing Company, Inc., Commodore Maritime, Atlas Maritime Company, S.A., Empresa De Navegacao Aliance, S.A., ABC Insurance Company, XYZ Insurance Company, M/V MISS DEE, M/V ARABIAN CHALLENGER, and M/V AL-NAVE, for damages sustained by the dredge CAPTAIN ROY P. BENOIT when it capsized in the Mississippi River in the early morning hours on October 29, 1982, while it was being towed by the M/V MISS DEE towards Venice, Louisiana.

Empresa De Navegacao Aliance, S.A., owner of the M/V ALNAVE, and Commodore Maritime and Atlas Maritime Company, S.A., owners of the M/V ARABIAN CHALLENGER were dismissed from this case via summary judgment.[1] The Court held a non-jury trial on August 5, 1985 and the matter was subsequently taken under submission. Having reviewed the evidence, the memoranda of counsel, and the applicable law, the Court now enters its Findings of Fact and Conclusions of Law. To the extent that overlap exists between them, the Court's Findings and Conclusions are to be treated interchangeably.

## FINDINGS OF FACT

### (1)

Associated Dredging Company, Inc., a Louisiana corporation with its principal place of business in Harvey, Louisiana, was, at all pertinent times, the owner of the dredge CAPTAIN ROY BENOIT, a cutterhead and jet suction dredge, official number 566143, measuring approximately fifty feet in length by thirty-six feet in width and five feet in depth. The dredge has an all steel welded hull which is divided into five compartments, with a ten foot wide open machinery space running the full length of the hull, and manhole covers over the compartments which can be made watertight if securely bolted down.

### (2)

Defendant, Real Towing Company, a Louisiana corporation, was, at all pertinent times, the operator of the M/V MISS DEE.

### (3)

Defendant, Continental Marine Towing Company, a Louisiana corporation, was, at all pertinent times, the owner of the M/V MISS DEE.

### (4)

This litigation arises out of the capsizing of the dredge CAPTAIN ROY BENOIT. The capsizing occurred in the early morning hours of October 29, 1982, upon the navigable waters of the Mississippi River in the Eastern District of Louisiana.

### (5)

On October 28, 1982, the M/V MISS DEE was manned by Captain Joseph Rivas Daigle, Jr., pilot Gerald Baker, and deckhand Kevin Breland.

### (6)

On October 28, 1982, a four vessel tow was made up at Associated Dredging's yard in Belle Chasse, Louisiana by Arnold Franklin Farmer, Roy Bergeron, Danny Harper and a deckhand. These individuals were employed by Associated Dredging

---

1. Plaintiff's pre-trial order contained allegations that these vessels created excessive wave wash which flooded the dredge's machinery space. On January 17, 1985, this Court granted these defendants' Motion for Summary Judgment as these defendants clearly showed that they could not have caused the wave wash complained of by Plaintiff.

aboard the dredge CAPTAIN ROY BENOIT. The tow was completed by Associated Dredging personnel prior to the arrival of the M/V MISS DEE. The tow consisted of a derrick barge attached to the towing hawser with the dredge CAPTAIN ROY P. BENOIT made up stern to stern with the derrick barge. Behind the dredge was the Q/B JANET and alongside the quarter boat was a small work boat, the M/V NELSON.

(7)

The M/V MISS DEE made up to the tow and inspected the tow before departing Associated Dredging's yard in Belle Chasse, Louisiana.

(8)

At approximately 1900 hours on Thursday, October 28, 1982, the M/V MISS DEE departed Associated Dredging's yard in Belle Chasse, Louisiana with the dredge CAPTAIN ROY BENOIT and the other vessels in tow.

(9)

While in tow, the dredge CAPTAIN ROY BENOIT had approximately one foot of freeboard at her bow and two to two and one-half of freeboard at her stern.

(10)

The M/V MISS DEE and her tow went through the Intercoastal Canal to the Algiers Locks where the crew of the dredge CAPTAIN ROY BENOIT inspected the tow lines and the dredge at approximately 12:30 a.m. on October 29, 1982. The crew of the dredge CAPTAIN ROY BENOIT stayed aboard the Q/B JANET during the voyage, but did not witness the accident.

(11)

The M/V MISS DEE and her tow then proceeded southbound on the Mississippi River. No other inspections of the tow were made by the Associated Dredging crew which this Court finds had assumed the obligation of inspecting and maintaining the tow.

(12)

At approximately 5:30 a.m. on the morning of October 29, 1982, two large unidentified oceangoing vessels passed the M/V MISS DEE and her tow within a few minutes of each other. These unknown vessels passed close to the tow's starboard side and caused the dredge CAPTAIN ROY BENOIT to shift violently from port to starboard, allowing wave wash to flood the open machinery space which ran the length of the hull. The Court notes that Gerald David Baker, an unlicensed pilot, was at the wheel of the M/V MISS DEE when the dredge capsized, and finds that Mr. Baker's lack of a required license in no way caused or contributed to the capsizing of the dredge CAPTAIN ROY BENOIT. The Court finds that Mr. Baker properly navigated the M/V MISS DEE and her tow at all times and did not receive any instructions or communications from the dredge crew although he had twice attempted to communicate with the crew of the dredge CAPTAIN ROY BENOIT.

(13)

The parties stipulated that Norman J. Dufour, Jr., a marine surveyor employed by Stickney Marine, was an expert in hull and machinery surveying. Mr. Dufour surveyed the dredge on November 8, 1982 at the Bisso Marine repair yard and noted that two manhole covers were missing on the aft port side of the dredge. He also noted that two square access hatches, each approximately four feet in length by twenty-eight inches in length, were not watertight and would allow water from wave wash to flow into the hold of the dredge CAPTAIN ROY BENOIT. Mr. Dufour also found a hole in the port bow corner of the dredge on internal inspection of the dredge. Mr. Dufour testified that this hole could not be seen from an outside inspection. Mr. Dufour also testified that if a wake or wave wash occurred, the dredge would take on water, first on the river or starboard side, and then from the shore or port side. Mr. Dufour further testified that the hole in the port bow corner would have aggravated the dredge's taking on water.

This Court accepts the testimony of Mr. Dufour and finds that the two manhole

covers on the aft port side of the dredge, the non-watertight square access hatches, and the hole in the port bow corner of the dredge allowed wave wash from two unknown oceangoing vessels to flood the hold and the open machinery space of the dredge.

(14)

This Court finds that the wave wash created by the unknown oceangoing vessels flooded the hold, creating a loss of freeboard and an increasing loss of bouyancy which caused the dredge CAPTAIN ROY BENOIT to capsize. Plaintiff's contentions that the M/V MISS DEE improperly managed or navigated the tow are not supported by the evidence and are rejected by this Court.

## CONCLUSIONS OF LAW

(1)

The Court has jurisdiction over this matter under its admiralty and maritime jurisdiction; 28 U.S.C. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure.

(2)

■ Associated Dredging had a contract of towage with defendants for the transportation of the dredge CAPTAIN ROY BENOIT from the Associated Dredging yard in Harvey, Louisiana to Venice, Louisiana. In a contract of towage, the owner of the barge warrants that the vessel offered for towage is sufficiently staunch and strong to withstand the ordinary perils to be encountered on the voyage. *Consolidated Grain & Barge Co. v. Marcona Conveyor,* 716 F.2d 1077, 1081 (5th Cir.1983). If the tow is unseaworthy by reason of weakness, decay, or leaks and such defects are not obvious to the master of the tug, the tug will be absolved from responsibility for such unseaworthiness if it is the cause of the damage complained of. This principle is commonly referred to as the warranty of seaworthiness. *Kenny Marine Towing v. M/V JOHN R. RICE,* 583 F.Supp. 1196, 1198 (E.D.La.1984); *Massman Const. v. Sioux City & N.O.*

*Barge Lines,* 462 F.Supp. 1362, 1368 (W.D. Mo.1979).

■ The owner of the tug may rely on the warranty of seaworthiness and is under no duty tomake a detailed inspection of the vessel either prior to or during the voyage itself. The M/V MISS DEE was entitled to assume that the dredge CAPTAIN ROY BENOIT was seaworthy. *Massman, supra,* at 1368–69; *King Fisher Marine Service, Inc. v. NP SUNBONNET,* 724 F.2d 1181 (5th Cir.1984).

(3)

■ The owner of the tug is not an insurer of his tow, but is obligated to use such care in the performance of the work as a prudent navigator would under similar circumstances. *Stevens v. The White City,* 285 U.S. 195, 202, 52 S.Ct. 347, 350, 76 L.Ed. 699, 703 (1932); *Derby Company v. A.L. Mechling Barge Lines, Inc.,* 258 F.Supp. 206, 211 (E.D.La.1966), *aff'd,* 399 F.2d 304 (5th Cir.1984).

(4)

■ Unless Associated Dredging can establish a failure on the part of the M/V MISS DEE to meet this standard of care, they cannot recover. *Stevens, supra,* 285 U.S. at 202, 52 S.Ct. at 350. The burden of proof as to the negligence of the M/V MISS DEE is on Associated Dredging. Negligence must be shown by proof of specific acts of negligence or proof of a failure to exercise reasonable maritime skill unaided by any presumption of law. *Massman, supra,* 462 F.Supp. at 1374; *Kenny Marine Towing, supra,* 583 F.Supp. at 1199. The mere fact that the dredge CAPTAIN ROY BENOIT capsized and was damaged does not raise a presumption of fault on the part of the M/V MISS DEE. *Stevens, supra; Houma Well Service, Inc. v. Tug CAPTAIN O'BRIEN,* 312 F.Supp. 257, 260 (E.D.La.1970).

(5)

■ Associated Dredging contends that negligence on the part of the defendants' tow, the M/V MISS DEE, caused the

dredge CAPTAIN ROY BENOIT to capsize. Associated Dredging's first theory of negligence is that the M/V MISS DEE was negligent because she failed to (1) reduce her speed when the two unknown ocean-going vessels overtook her on the river, (2) failed to allow slack in the towing hawser which would leave the tow better able to ride the excessive wakes caused by these vessels, and (3) failed to request that these overtaking vessels slow down when they were generating large wakes.

The uncontroverted testimony of Mr. Baker, the pilot of the M/V MISS DEE, established the fact that he cut the speed of the M/V MISS DEE from one-half throttle (6 m.p.h.) to one-quarter throttle (3 m.p.h.) when the first vessel passed. Mr. Baker also stated that the M/V MISS DEE could not have slowed to a speed below 3 m.p.h. or she would have lost her steerageway. Mr. Baker further testified that he got on the radio and put out a warning that a small dredge was in tow. Mr. Baker also testified that he did not lengthen the towing hawser because it would not have had any effect on the tow's ability to ride the wakes created by the oceangoing vessels. The Court accepts this uncontroverted testimony and holds that plaintiff has failed to carry its burden of proof and has not shown that the M/V MISS DEE failed to exercise reasonable maritime skill under the circumstances.

### (6)

Plaintiff's second theory of recovery requires that the Court first find the dredge CAPTAIN ROY BENOIT unseaworthy and then seeks to impose liability upon the M/V MISS DEE for failing to inspect the dredge and then taking her in tow.

While it may have been prudent seamanship for the crew of the M/V MISS DEE to inspect the hatches and manhole covers to insure they were secure and tight before proceeding, the M/V MISS DEE was nevertheless not an insurer of the tow. *McDonough Marine Serv., Inc. v. M/V ROYAL STREET,* 465 F.Supp. 928, (E.D.La.1979), *affirmed,* 608 F.2d 203 (5th Cir.1979), *Derby Company v. A.L. Mechling Barge Lines, Inc.,* 258 F.Supp. 206 (E.D.La.1966), *affirmed per curiam,* 399 F.2d 304 (5th Cir.1968); *Curtis Bay Towing Co. of Va., Inc. v. Southern Lighterage Corp.,* 200 F.2d 33 (4th Cir.1952).

◼ The visual inspection of the dredge by the crew of the M/V MISS DEE failed to reveal that two of the manhole covers aboard the dredge CAPTAIN ROY BENOIT were not watertight, that a fracture existed in the port bow of the dredge, and failed to disclose the fact that the two square access hatches could not be made watertight. However, the tug was under no duty to make a detailed examination of the dredge CAPTAIN ROY BENOIT. *Nat G. Harrison Overseas Corporation v. American Tug Titan,* 516 F.2d 89 (5th Cir.), *modified in part,* 520 F.2d 1104 (5th Cir.1975). The visual inspection of the dredge made by the crew of the M/V MISS DEE was adequate and reasonable under the circumstances. *Dow Chemical Co. v. M/V Gulf Seas,* 428 F.Supp. 667 (W.D.La. 1977); *New Orleans Coal & Bisso Towboat Co. v. United States,* 86 F.2d 53 (5th Cir. 1936).

◼ The dredge CAPTAIN ROY BENOIT was unseaworthy. Seaworthiness is a relative term which looks to such matters as the type of vessel, character of the voyage, reasonably expectable weather, and navigational conditions. *May v. Hamburg-Amerikanische Packetfahrt Aktiengesellschaft,* 290 U.S. 333, 346–49, 54 S.Ct. 162, 165, 78 L.Ed. 348 (1933) (The Isis); *J. Gerber & Co. v. S.S. Sabine Howaldt,* 437 F.2d 580, 596 (2d Cir.1971); *Horn v. Cia de Navegacion Fruco, S.A.,* 404 F.2d 422, 431 (5th Cir.1968), *cert. denied,* 394 U.S. 943, 89 S.Ct. 1272, 22 L.Ed.2d 477 (1969). A seaworthy vessel is one which is sufficiently staunch and strong to withstand the ordinary perils to be encountered on the voyage. See *South, Inc. v. Moran Towing and Transportation Co.,* 360 F.2d 1002, 1005 (2d Cir.1966); *Walker v. Harris,* 335 F.2d 185, 191 (5th Cir.1964), *cert. denied,* 379 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342 (1964).

In the instant case, weather was not a factor. The crew of the dredge CAPTAIN ROY BENOIT knew that the dredge would be heading southbound on the Mississippi River in an area of the river in which large ocean going vessels frequently navigated. The dredge either knew or should have known that these ocean going vessels create large wakes, commonly referred to as "wave wash," which could wash over a small dredge with one to two and one-half feet of freeboard.

The dredge crew did not secure two of the aft port manhole covers on the dredge. Moreover, the dredge crew did not take any precautions to keep water from flowing into the hold of the CAPTAIN ROY BENOIT through the square access hatches. The dredge crew's failure to properly secure the CAPTAIN ROY BENOIT rendered her unseaworthy. The capsizing occurred under circumstances and conditions which the Associated Dredging crew should have anticipated and overcome through adequate preparation of the CAPTAIN ROY BENOIT prior to her voyage. Plaintiff has failed to prove that an unforeseeable and intervening cause brought about the capsizing of the dredge and cannot escape the presumption that the CAPTAIN ROY BENOIT was unseaworthy. See *Walker v. Harris, supra.*

### (7)

The M/V MISS DEE correctly asserted that a tug is not responsible for accidents which occur as a result of the unseaworthiness of its tow. See *Ryan Walsh Stevedoring Co. v. James Marine Service,* 557 F.Supp. 457 (E.D.La.1983), *aff'd,* 729 F.2d 1457 (5th Cir.1984). The exception to the rule, i.e., the tug is responsible if the alleged unseaworthiness is so apparent that it would be negligent for the tug to attempt to proceed is inapplicable here. See *Dameron White Co. v. Angola Transfer Co.,* 19 F.2d 12, 14 (5th Cir.1927); *Otto Candies, Inc. v. Great American Insurance Co.* 221 F.Supp. 1014, 1018 (E.D. La.1963), *aff'd,* 332 F.2d 372 (5th Cir.1964). Plaintiff put forth no evidence which proved that the unseaworthiness of the CAPTAIN ROY BENOIT was apparent to the crew of the M/V MISS DEE. The only eyewitness testimony adduced at trial was that of Mr. Baker, the pilot of the M/V MISS DEE, who noted a slight starboard list after the second oceangoing vessel had passed. Mr. Baker testified that the dredge capsized within three minutes of his noticing the list. The Court accepts this testimony and concludes that plaintiff's second theory of recovery is unsupported by the evidence and is without merit.

### (8)

Plaintiff's final theory of recovery involves the invocation of what is commonly referred to as the Pennsylvania Rule. See *THE PENNSYLVANIA,* 86 U.S. (19 Wall) 125, 22 L.Ed. 148 (1873).

In its simplest terms, that rule states that where a vessel is guilty of a statutory violation, the defaulting ship must show "not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been". *Candies Towing Co., Inc. v. M/V B & C Eserman,* 673 F.2d 91, 93 (5th Cir.1982), *citing* 86 U.S. (19 Wall) at 136, 22 L.Ed. at 151. *See also Allied Chemical Corporation v. Hess Tankship Company of Delaware,* 661 F.2d 1044 (5th Cir.1981); G. Gilmore & C. Black, *The Law of Admiralty* (2d ed. 1975) § 10–25 at 898.

The Court notes that Mr. Baker's lack of a required license is a statutory violation of a regulation designed "to assure safe navigation," which provides that an uninspected towing vessel shall be under the "actual direction and control" of a person licensed to operate that type of vessel in the particular geographic area. 46 U.S.C.S. § 405(b)(2) (Law.Coop.1972), *see also,* 46 U.S.C.S. § 8904 (La.Coop.1985); 46 C.F.R. § 10.16 (1984).

The Court finds that plaintiff has proven a statutory violation and agrees with plaintiff's contention that the Pennsylvania Rule is applicable to non-collision cases such as the instant matter before the Court. *See In re Seaboard Shipping*

*Corp.*, 449 F.2d 132, 136, 1971 A.M.C. 2145, 2152 (2d Cir.1971), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2038–39, 32 L.Ed.2d 337 (1972); *Kernan v. American Dredging Co.*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958); *The Denali*, 112 F.2d 952 (9th Cir.1940).

 The Pennsylvania Rule shifts the burden of proof as to *causation* to the statutory offender, but it does not ipso facto impose liability. *Otto Candies, Inc. v. M/V MADELINE D*, 721 F.2d 1034, 1036 (5th Cir.1983), citing *Florida East Coast Railway Company v. Revilo Corporation*, 637 F.2d 1060, 1065–66 (5th Cir.1981); *Green v. Crow*, 243 F.2d 401, 403 (5th Cir.1957).

Although the vessel must be manned with a competent crew, a deficiency in manning that has no causal connection to the damages at issue is not significant. *Union Oil Co. of California v. M/V POINT DOVER*, 756 F.2d 1223, 1229 (5th Cir.1985), *citing Southern Pacific Co. v. United States*, 72 F.2d 212, 215, 1934 A.M.C. 1185, 1189 (2d Cir.1934). Mr. Baker's lack of the required license could not have been a cause of the damage to the dredge CAPTAIN ROY BENOIT. How Mr. Baker's possession of a license could have prevented the two ocean-going vessels from wave washing the dredge is an unfathomable mystery. Although the rule of *The PENNSYLVANIA* imposes a strenuous burden, it does not negate the clear requirement of causation. *Union Oil Co. of California, supra*, 756 F.2d at 1230, *citing Candies Towing v. The M/V B & C ESERMAN*, 673 F.2d 91, 1983 A.M.C. 2033 (5th Cir.1982). While the defendants are guilty of a statutory violation, the violation did not have anything to do with the capsizing of the dredge CAPTAIN ROY BENOIT.

### CONCLUSION

In sum, this Court rejects plaintiff's contentions that defendants were negligent in their navigation of the tow and failed to properly inspect the dredge CAPTAIN ROY BENOIT before taking her in tow.

Moreover, this Court holds that the statutory violation by the defendants in having an unlicensed pilot at the wheel when the dredge capsized neither caused nor contributed to the capsizing of the dredge CAPTAIN ROY BENOIT.

For these reasons, this Court concludes that the defendants are not liable for the damages that resulted from the capsizing of the dredge CAPTAIN ROY BENOIT. As stated above, the unseaworthiness of the dredge combined with wave wash created by two large ocean-going vessels to cause the resulting damage.

Counsel for the M/V MISS DEE and her interests shall submit an appropriate judgment consistent with this opinion.