CONSOLIDATED GRAIN & BARGE COMPANY, Plaintiff-Appellant,

v.

MARCONA CONVEYOR CORPORATION, et al., Defendants-Appellees.

MARCONA SALES, INC., Plaintiff-Appellee,

v.

CONSOLIDATED GRAIN & BARGE COMPANY, Defendant-Appellant.

No. 82-3534
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 11, 1983.

Hebert & Abbott, André J. Mouledoux, New Orleans, La., for plaintiff-appellant.

Phelps, Dunbar, Mark, Claverie & Sims, James H. Roussel, Christopher O. Davis, New Orleans, La., for Marcona.

Bernard, Micholet & Cassisa, Paul V. Cassisa, Metairie, La., for Hollywood Marine.

Before GEE, POLITZ and JOHNSON, Circuit Judges.

PER CURIAM:

At about 6:40 a.m. on March 25, 1977, Barge BUNGE–28, loaded with aragonite, a fine sand, buckled in the middle and sank, carrying its cargo to the bottom of the Mississippi River. In the proceedings below, the legal owners of Barge BUNGE–28, Consolidated Grain and Barge Company (Consolidated),[1] sued for the loss of the barge, alleging that Barge BUNGE–28 sank because its cargo was improperly concentrated in the center of the hopper compartment; the owners of the conveyor ship, Marcona Conveyor Corporation and Marcona Ocean Carriers, Ltd. (hereinafter jointly referred to as Marcona), and the stevedore in charge of the loading, Hollywood Marine, Inc. (Hollywood), countered that Barge BUNGE–28 sank because it was unseaworthy. At the conclusion of a four-day bench trial, the district court ruled that Consolidated had failed to rebut the presumption of unseaworthiness which arises when a barge in tow sinks in normal use for no apparent reason and had failed to establish that negligent loading caused the sinking of Barge BUNGE–28. Accordingly, the district court rendered judgment for the defendants. Consolidated appeals, arguing that the trial judge misapplied the presumption of unseaworthiness, that his findings as to the proximate cause of Barge BUNGE–28's sinking and as to defendant's negligence are clearly erroneous, and that he abused his discretion in not allowing Consolidated to put into evidence the complete loading records of Barge BUNGE–28 and evidence as to the loading of all 38 of the barges loaded contemporaneously with Barge BUNGE–28. For the reasons set out below, we find Consolidated's arguments to be without merit and accordingly affirm the judgment of the trial court.

I.

On March 22–23, 1977, the M/V MARCONA CONVEYOR, a 32,607 gross ton self-discharging bulk carrier owned and operated by Marcona,[2] was anchored in the Mississippi River near Davant, Louisiana, laden with a cargo of aragonite.[3] The cargo owner, Marcona Sales, Inc. (Marcona Sales), had contracted with Consolidated to transport a portion of the ship's cargo of aragonite from the side of the vessel to various points of destination upriver. In order to comply with this contract, Consolidated assembled a fleet of 26 barges, one of which was Barge BUNGE–28, together with several tugs owned and/or operated by T. Smith & Son, Inc. (T. Smith) which would tow the barges from various fleeting facilities in the New Orleans area to the "staging" or loading point, and tow the barges back up to various fleeting facilities in the New Orleans area once they had been loaded.

Marcona Sales also contracted with T. Smith to shift 38 barges (including the 26 barges provided by Consolidated) alongside the M/V MARCONA CONVEYOR as they were being loaded "mid-stream" in the Mississippi River. The loading operation was under the supervision of Hollywood, an expert loading stevedore under contract to

---

1. As the bareboat charterer, Consolidated was the owner *pro hac vice* of Barge BUNGE–28. Gilmore & Black, *Admiralty,* § 4–23 (1975 edition).

2. The vessel was owned by Marcona Conveyor Corporation, under bareboat charter to Marcona Ocean Carriers, Ltd., and was transporting a cargo of aragonite for Marcona Sales, Inc.

3. Aragonite is a fine grain sand mined from the ocean floor offshore of the Bahamas and used in the construction industry.

Marcona Sales to unload the cargo of aragonite into the barges.

During the morning of March 23, each of the 38 barges, including Barge BUNGE–28, was brought alongside the M/V MARCONA CONVEYOR and loaded under the supervision of Hollywood personnel. According to the barge capacity tables furnished by Bunge Corporation, the owner of Barge BUNGE–28, the cargo of aragonite aboard Barge BUNGE–28 was well within the cubic capacity and weight capacity listed for that particular barge.

No witness who testified at trial could recall the exact cargo distribution of the aragonite loaded aboard the Barge BUNGE–28; however, no witness could recall anything unusual about the way in which the barge was loaded.[4]

On the morning of March 24, Barge BUNGE–28 was taken in tow by the M/V LADY HAZEL, a vessel under contract to T. Smith, and was towed upriver approximately 65 miles to Triangle Fleeting Corporation's (Triangle) fleeting area in New Orleans, Louisiana. That evening, Barge BUNGE–28 was placed into a tow at the Triangle fleeting area for subsequent towage to its final destination upriver. When Barge BUNGE–28 was placed into its

northbound tow, the barge appeared to be in good shape, it was on an even keel with adequate freeboard, and was even with the other barges in the tow.

At approximately 6:00 a.m. on March 25, 1977, the tow was made up to the M/V MABA KELCE tug owned by Mid-America Transportation Company (Mid-America). The M/V MABA KELCE was faced up to the Barge BUNGE–28 and the barge to its immediate starboard side. The captain of the M/V MABA KELCE backed the stern of the tow away from the fleet and was about to push ahead on the tow when, at approximately 6:40 a.m., the Barge BUNGE–28 buckled in the center without warning and sank.

Consolidated subsequently sued Marcona and others for loss of the barge.[5] At trial, Consolidated attempted to prove that Barge BUNGE–28 was improperly loaded by introducing survey reports of 25 of the 38 barges loaded alongside the M/V MARCONA CONVEYOR with Barge BUNGE–28.[6] The trial court received ten representative survey reports into evidence. These surveys showed that on some of the other barges there was as much as 21 feet of bare metal at either end of the hopper compartment. The parties' experts disagreed as to

---

**4.** Representatives of Hollywood testified that Barge BUNGE–28 was loaded in accordance with standard loading procedure. A surveyor employed by Marcona, who conducted a loaded draft survey of the barges at the staging area shortly after loading, noted nothing unusual about the cargo distribution on Barge BUNGE–28.

**5.** Consolidated originally filed suit against Marcona Conveyor Corporation, Marcona Carriers, Ltd., Hollywood, T. Smith, Mid-America, Triangle, and various unidentified insurance companies, *in personam,* and the M/V MARCONA CONVEYOR and M/V MABA KELCE, *in rem,* seeking damages for the sinking of Barge BUNGE–28. Shortly thereafter, Marcona Sales, Inc. filed a complaint against Consolidated, Hollywood and Mid-America, *in personam,* and the Barge BUNGE–28 and M/V MABA KELCE, *in rem,* seeking recovery for damages and the loss of the cargo of aragonite which was aboard the BUNGE–28 when it sank. The two cases were consolidated. Prior to trial, Consolidated paid Marcona Sales, Inc. $7,385.00 for the cargo of aragonite lost aboard

the Barge BUNGE–28, thus rendering moot the claim of Marcona Sales, Inc. for the loss of cargo. Various counterclaims, third-party claims and cross-claims were subsequently filed.

During the course of trial as to the issue of liability, the court granted plaintiff's motion for the voluntary dismissal of Triangle and granted a motion for involuntary dismissal to defendants Mid-America and T. Smith. The Court also dismissed all third-party claims and cross-claims involving these three defendants. At the conclusion of the evidence, the trial court rendered orally its findings of fact and conclusions of law, ruling in favor of the remaining defendants Marcona and Hollywood and dismissing Consolidated's claim with prejudice. On this appeal, Consolidated challenges only the trial court's findings of fact and conclusions of law with respect to Marcona and Hollywood.

**6.** These surveys were conducted approximately eight days after the barges had been loaded and after they had been towed a considerable distance upriver.

whether this would be an acceptable cargo distribution.[7]

Defendants Marcona and Hollywood contended that Barge BUNGE–28 sank because it was unseaworthy—i.e. unfit for normal use.[8] They pointed specifically to the fact that the barge, at 15 years of age, was approaching the end of its useful life, that its transversal frame construction made the barge more susceptible to buckling with age, and that the barge had an extensive history of repairs, including an improperly fused double V butt on its starboard midship side.

At the close of the evidence, the trial court concluded that "[t]here has been no evidence ... to establish what was the proximate cause of the sinking of the barge." [9] The court concluded that "when there is a sinking of the barge as this barge did with no apparent reason in normal use, there is a presumption that it is unseaworthy and the obligation is on the plaintiff to overcome that presumption." The trial court found that Consolidated had failed to overcome that presumption of unseaworthiness and also found that Consolidated had failed to establish that any alleged negligence in loading the barge was the proximate cause of its sinking.

## II.

On this appeal, Consolidated raises several challenges to the judgment below. First, Consolidated challenges the district court's interpretation and application of the presumption of unseaworthiness. Next, Consolidated challenges the district court's findings of fact: that Consolidated failed to overcome this presumption, and that Consolidated failed to prove that the proximate cause of the sinking was any alleged negli-

gence in the loading of the barge. Last, Consolidated challenges the district court's exclusion of certain evidence. Our review of Consolidated's arguments reveals that each is without merit.

*The Presumption of Unseaworthiness.*

Under general maritime law, in a towage situation such as that involved in this case the owner of the barge is responsible for the seaworthiness of his vessel, while those responsible for the handling (e.g. towing, loading, etc.) of the barge are obligated to perform these tasks using such care as a prudent person would under similar situations. *Derby Company v. A.L. Mechling Barge Lines, Inc.,* 258 F.Supp. 206, 211 (E.D.La.1966), *aff'd,* 399 F.2d 304 (5th Cir.1968) (and cases cited therein); *Massman Construction v. Sioux City & N.O. Barge Lines,* 462 F.Supp. 1362, 1369 (W.D. Mo.1979). *See Winn v. C.I.R.,* 595 F.2d 1060 (5th Cir.1979) (barge owner has non-delegable duty to furnish seaworthy vessel in contract of towage). Where, as here, a barge in tow sinks in calm water for no immediately ascertainable cause, the law translates these duties into burdens of proof: in the absence of proof that the barge was improperly handled, the vessel's sinking is presumed to be a direct result of her unseaworthiness. *Derby,* 258 F.Supp. at 211. Here, the district judge found there was no evidence that the Barge BUNGE–28 was improperly loaded or otherwise improperly handled. Accordingly, he applied this presumption of unseaworthiness against Consolidated, the legal owners of the barge. This application of the presumption was correct. The cases applying this presump-

---

7. Both parties' witnesses agreed that the ideal distribution of such a cargo would be to have the aragonite spread evenly throughout the entire length of the hopper compartment, but that such a distribution is rarely achieved in practice.

8. "Seaworthiness, as that term has been defined and redefined, is reasonable fitness to perform or do the work at hand." *Lamar Towing Inc. v. Fireman's Fund Insurance Company,*

352 F.Supp. 652, 661 (E.D.La.), *aff'd* 471 F.2d 609 (5th Cir.1972), *cert. denied,* 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973), *quoting Walker v. Harris,* 335 F.2d 185, 191 (5th Cir.), *cert. denied,* 379 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342 (1964).

9. The court refused to infer the distribution of the cargo on the Barge BUNGE–28 from the reports submitted by Consolidated regarding the distribution of cargo on the other barges.

tion of unseaworthiness to allocate burdens of proof in litigation between owners and handlers of a barge [10] make clear that the burden is on the owner of the tow to establish any alleged negligence on the part of the handler; if he cannot do so, the tow "simply cannot recover." *Massman,* 462 F.Supp. 1362 at 1369.

Consolidated relies heavily on a 1940 case from the Second Circuit: *Commercial Molasses Corporation v. New York Tank Barge Corporation,* 114 F.2d 248 (2d Cir.), aff'd, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1940). This reliance is misplaced. The principles enunciated in *Commercial Molasses* derive from the relationship of bailor-bailee which existed in that case.[11] Such a relationship does not exist here [12] and those principles are, therefore, not applicable. The burden of persuasion as to the seaworthiness of Barge BUNGE–28 remains with Consolidated as the legal owner of the barge.[13]

### The District Court's Findings of Fact.

■ In admiralty cases, questions of proximate cause are treated as factual issues for purposes of appellate review, *Kratzen v. Capital Marine Supply, Inc.,* 645 F.2d 477 (5th Cir.1981), as are questions of negligence, *Noritake Co., Inc. v. M/V Hellenic Enterprises Champion,* 627 F.2d 724, 728 (5th Cir.1980). Accordingly, findings as to both issues are reviewed under the "clearly erroneous" standard on appeal. *McAllister v. United States,* 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *Noritake,* 627 F.2d at 727. A finding is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Verrett v. McDonough Marine Service,* 705 F.2d 1437, 1441 (5th Cir.1983), *quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

10. A related but not identical presumption operates in marine insurance litigation; there it is used to allocate burdens of proof where the issue is whether the sinking was attributable to an insured risk (e.g. a peril of the sea) or to a risk against which the vessel was not insured (e.g. unseaworthiness). *See, e.g., Darien Bank v. Travelers Indemnity Company,* 654 F.2d 1015 (5th Cir.1981); *Reisman v. New Hampshire Fire Insurance Co.,* 312 F.2d 17 (5th Cir. 1963).

11. In *Commercial Molasses,* the owner of a cargo of molasses sued a private carrier for loss of the cargo when a molasses-freighted barge chartered by the private carrier sank without apparent explanation. The private carrier filed for limitation of liability. The trial judge found that "upon all the evidence, the cause of the accident ha[d] been left in doubt," *Commercial Molasses,* 314 U.S. at 107, 62 S.Ct. at 159, and applied the presumption of unseaworthiness to tip the scales against the barge owner. However, the trial judge read an insurance clause in the contract of affreightment to require the cargo owner to effect cargo insurance, which it had failed to do; on this basis he dismissed petitioner's claim. *Id.* The Second Circuit (L. Hand, J.) affirmed, but on a different basis. That court held that the burden was on the cargo owner to prove that the carrier had furnished an unseaworthy barge. *See* 114 F.2d 248. By a five-to-four majority, the Supreme Court affirmed the Court of Appeals but narrowly restricted the position advanced by the

Second Circuit to the facts of the particular case. The Court emphasized that *Commercial Molasses* was a suit between the cargo owner and a private carrier pursuant to a contract which "gave to (the private carrier) the status of a bailee for hire of the molasses." 314 U.S. at 108, 62 S.Ct. at 159. The Court reiterated that this case did not involve a contract of towage, but rather one of affreightment. Thus, the result in no way altered the applicable assumptions of liability and the corresponding burdens of proof in cases involving towage situations, *id.* at 109, 62 S.Ct. at 160. *See Dow Chemical Co. v. M/V CHARLES DITMAR, JR.,* 545 F.2d 1091, 1096 (7th Cir.1976) (*Commercial Molasses* confined to contracts of affreightment).

12. The instant litigation is not a suit between cargo interests and a bailee of the goods as *Commercial Molasses* was, but a suit between the legal owner of the barge and those who handled the barge at various points in its journey. This suit does not involve a contract of affreightment, and the claim here is not for loss of the cargo but for loss of the vessel.

13. The Fourth Circuit case of *Hampton Roads Carriers v. Allied Chemical Corp.,* 329 F.2d 387 (4th Cir.), *cert. denied,* 379 U.S. 839, 85 S.Ct. 78, 13 L.Ed.2d 46 (1964), on which Consolidated also relies, also involves a claim for loss of cargo and does not help Consolidated's claim for loss of the barge.

We hold that it was not clearly erroneous for the trial court to find that no evidence had been presented which established the actual proximate cause of the sinking of Barge BUNGE–28, that Consolidated had failed to overcome the applicable presumption of unseaworthiness, and that Consolidated had failed to prove that the manner in which Barge BUNGE–28 was loaded was the proximate cause of the barge's sinking. There is ample support in the record for these findings. Having reviewed the entire record, we find we do *not* have the "definite and firm conviction that a mistake has been committed." The trial court's findings against Consolidated are affirmed.

### The Excluded Evidence.

Consolidated contends that the trial court erred in refusing to admit into evidence a portion of Barge BUNGE–28's loading records and the 15 additional survey reports prepared by Consolidated in preparation for this litigation. The determination of whether evidence should be admitted based on considerations of relevance and materiality is vested in the broad discretion of the trial court. *Young v. Illinois Central Gulf R. Co.,* 618 F.2d 332, 337 (5th Cir.1980). In reviewing the trial court's decision as to these matters, we must accordingly ask whether the trial court's decision constituted an abuse of that discretion. *King v. Ford Motor Co.,* 597 F.2d 436 (5th Cir.1979). Evidence which is repetitious of evidence already introduced may properly be excluded, *Meadows & Walker Drilling Company v. Phillips Petroleum Company,* 417 F.2d 378 (5th Cir.1969).

At trial, Consolidated sought to introduce into evidence the Bunge Corporation's complete barge file on Barge BUNGE–28, containing survey reports, maintenance records and loading records. In accordance with the trial court's pre-trial instructions, Consolidated had furnished to opposing counsel all the survey reports and

maintenance records sought to be admitted at trial. However, Consolidated had not previously furnished opposing counsel with all the loading records. The trial court ruled inadmissible those loading records that had not been furnished. The exclusion of this evidence was well within the trial court's discretion to enforce the pre-trial order. *See Clary v. Ocean Drilling & Exploration Co.,* 609 F.2d 1120, 1123 (5th Cir. 1980). Not only did Consolidated seek to submit these documents in defiance of the district court's pre-trial order, but the record indicates that the district court could well have considered these documents repetitive and cumulative.[14] Likewise, the district court could reasonably have considered the additional 15 survey reports as repetitive and of little additional probative value as to the distribution of cargo on Barge BUNGE–28. We cannot say that the trial court abused its discretion by refusing to admit this evidence.

The judgment of the district court is AFFIRMED.

---

14. Consolidated argues that the "loading records substantiated the proposition that Barge BUNGE–28 was continually in use after the ... (1968) repairs, carrying loads equal to and in excess of [the load of aragonite under which it sank] without incident." The information admitted from the loading file covers the barge's loading history from early 1971 to the date of the casualty, while the maintenance reports and survey reports appear to contain additional information on this point.