IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-60511
Summary Calendar
_____

NEW YORK LIFE INSURANCE AND ANNUITY COMPANY,

Plaintiff,

versus

MARIE W. CULPEPPER, ET. AL,

Defendant.

STEPHANIE SEVERANCE, WILLIAM S. CULPEPPER, EILEEN WHITE,
CHARLES NAYLOR, JR., RUTH NAYLOR, ELIZABETH COMBUS,
Defendants-Cross Claimants-Appellants,

MARIE W. CULPEPPER,

Cross Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(4:93CV152LN)
_____

March 14, 1996

Before KING, SMITH, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:[*]

Appellants appeal the district court's order and final
judgment finding Appellee successor owner of four annuity policies,
and awarding Appellee the funds from those annuities.  Finding the
district court erred in admitting and relying on inadmissible
hearsay that is not harmless, we reverse and render.

_____

     [*]  Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

BACKGROUND

Appellee Marie Culpepper is the widow of Bryan Culpepper, who died on May 1, 1993. Bryan Culpepper lost both his eyes and his left arm in World War II. After being discharged, he moved in with his parents and siblings in Meridian, Mississippi until he met and married Marie Culpepper eleven years later.[1] Bryan and Marie Culpepper divorced within a few years, but remarried a short time later, remaining married until Bryan Culpepper's death in 1993. Bryan Culpepper managed a courthouse concession stand. He was a bright man with a good business sense, who invested his money well. He died leaving a sizable estate to his wife as sole beneficiary under his will.

Despite his interest and ability to handle his own business affairs, Bryan Culpepper required assistance with his day-to-day activities, which his wife provided. Marie Culpepper often either assisted her husband in signing documents or signed his name for him. Over the years, Marie Culpepper signed checks, credit cards, medical forms, and insurance policies for her husband. However, she usually signed such documents in the presence of Bryan Culpepper and a third party.

Bryan Culpepper purchased four annuity policies from New York Life Insurance and Annuity Corporation ("New York Life"). At the time of the purchase, Bryan Culpepper had his wife sign his name

---

[1] Appellants in this case include a brother, three sisters, a nephew, and a niece of Bryan Culpepper. One sister, Ruth Naylor, and one brother, William S. Culpepper, testified at trial about the care they provided Bryan Culpepper both before and after he married Marie Culpepper.

for him as owner and annuitant in the presence of his insurance agent and close friend, Ron Gardner ("Gardner").

In August 1984, following a change in federal tax law, New York Life issued a mass mailing, consisting of several hundred thousand letters, to all of its annuitants "strongly recommend[ing]" that a successor owner be named on the policies. Bryan Culpepper was sent four of theses letters, one for each policy. A form was included to be used in naming a successor owner. Marie Culpepper signed Bryan Culpepper's name to the forms, designating her as successor owner, and mailed them directly to New York Life.[2] No third party witnessed the signing, and none of the forms required a witness or notary. Neither Bryan nor Marie Culpepper notified Gardner of the change in successor owner.

In May 1992, while Bryan Culpepper was in the hospital undergoing treatment for cancer, he called Gardner to his hospital room and presented Gardner with a slip of paper upon which he had listed the names of his relatives and certain amounts of money he wished these relatives to receive upon his death. Gardner drafted the appropriate documents, which Bryan Culpepper signed with Gardner's assistance, naming the listed relatives as beneficiaries on certain annuity and life insurance policies, including the four annuities in which Marie Culpepper had been named successor owner back in 1984.

---

[2] Because some many customers were affected by the new tax law, New York Life sent the letters and successor owner forms directly to the annuitants to avoid flooding its local agents with calls from its customers.

Bryan Culpepper died a year later from cancer. Soon after his death, Marie Culpepper and Gardner received a letter from New York Life stating that Marie Culpepper was named as successor owner of the four annuity policies. However, after Marie Culpepper was informed of her status as successor owner, she changed the beneficiaries on the four annuity policies to her estate.

New York Life brought an interpleader action in the district court, asking for directions as to whom to pay proceeds of the four annuities. They named as defendants Marie Culpepper and those relatives of Bryan Culpepper named as beneficiaries in 1992 ("Appellants"). Marie Culpepper filed an answer making claim to the proceeds of the annuities, and Appellants filed a separate answer making claim to the proceeds, along with an action against New York Life and Gardner for failing to effectuate the change of beneficiaries made by Bryan Culpepper in 1992. The district court dismissed New York Life and Gardner upon its ruling on a motion for summary judgment. The case then proceeded to a bench trial between Marie Culpepper and Appellants. On July 26, 1995, judgment was entered in favor of Marie Culpepper. The court found that Marie Culpepper was authorized to sign the successor owner forms because she did so at her husband's request and therefore, her rights as successor owner were superior to Appellants.

## INADMISSIBLE HEARSAY

"District courts are given broad discretion in rulings on the admissibility of evidence; we will reverse an evidentiary ruling only when the district court has clearly abused this discretion and

'a substantial right of [a] party is affected.'" *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 277 (5th Cir. 1991) (citing *Muzyka v. Remington Arms Co., Inc.*, 774 F.2d 1309, 1313 (5th Cir. 1985); *McNeese v. Reading and Bates Drilling Co.*, 749 F.2d 270, 275 (5th Cir. 1985); FED. R. EVID. 103(a)).

Appellants contend that the district court erred in admitting Marie Culpepper's testimony that Bryan Culpepper told her to sign the successor owner forms in 1984 because the statement is hearsay tending to show Bryan Culpepper's intent. Specifically, Appellants argue that Marie Culpepper's statement that her husband instructed her to sign the successor owner forms directly addresses the validity of the 1984 designation of Marie Culpepper as successor owner to the four annuity policies at issue in this case. The district court overruled Appellants' objection, finding that Marie Culpepper's statement was not hearsay because it was not offered for the truth of what was said, but to the reason why she signed Bryan Culpepper's name to the successor owner forms. We disagree.

An out-of-court statement constitutes hearsay when offered in evidence "to prove the truth of the matter asserted." *See Anderson v. United States*, 417 U.S. 211, 219, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); FED. R. EVID. 801(c). The hearsay rule applies even when the statement is made by a witness unavailable to testify due to death. *See* FED. R. EVID. 804(a)(4). We find that Marie Culpepper's statement is clearly hearsay because it speaks to the validity of the signature on the successor owner forms. Although the district court ruled that the statement was only offered to show Marie

5

Culpepper's state of mind, the court's memorandum opinion and order filed after the bench trial makes apparent that the court relied on Marie Culpepper's statement as evidence in support of its judgment. The court's memorandum and order states: "Marie testified credibly that she completed and signed the forms at Bryan's request."

Marie Culpepper argues that her testimony as to her husband's out-of-court statement falls under the hearsay exceptions listed in Rule 804, without specifying which exception applies.[3] The only exception that is remotely relevant is the residual exception, Rule 804(b)(5).[4] However, this Court has held that this exception must only be used sparingly. *Rock*, 922 F.2d at 282. The admission of Bryan Culpepper's statement to Marie Culpepper instructing her to designate herself as successor owner and sign his name to the applicable forms establishes not only the reason why Marie Culpepper signed her husband's name to the successor owner forms, but also Bryan Culpepper's intent that Marie Culpepper become

---

[3] Any challenge to Gardner's testimony regarding Bryan Culpepper's out-of-court statements is not properly before this Court because no objection was raised during the testimony to preserve error for appeal.

[4] The Rule states in pertinent part:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

FED. R. EVID. 804(b)(5).

successor owner and consent for her to sign his name to the forms. Such a statement is inherently unreliable, and therefore cannot meet the requirement of Rule 804(b)(5) that the statement have "equivalent circumstantial guarantees of trustworthiness." Therefore, we find that Marie Culpepper's testimony regarding Bryan Culpepper's out-of-court statement is not admissible under any hearsay exception.

Having determined that Marie Culpepper's testimony regarding Bryan Culpepper's out-of-court statement constitutes inadmissible hearsay, we must next determine whether the admission of hearsay was harmless. "The question of harmless error is inseparable from that of the sufficiency of the evidence to support the finding or verdict the erroneously admitted evidence went toward proving. For if, without it, the remaining evidence is insufficient to support the final result, the error cannot be said to have been harmless." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 (5th Cir. 1980) (citing 11 Wright & Miller, Federal Practice and Procedure: Civil § 2885, at 289-90 (1973). Because Bryan Culpepper did not sign the successor owner forms himself, the evidence presented apart from the inadmissible hearsay testimony is insufficient to prove the validity of the signature on the forms and is therefore not harmless. The evidence clearly proves that the change of beneficiary documents signed by Bryan Culpepper in 1992 were properly executed, and as there is no proper evidence in the record sufficient to support a reasonable conclusion that the successor owner forms were executed with the consent of Bryan

7

Culpepper or that it was his intent that Marie Culpepper be the successor owner, we reverse the final judgment of the district court and render judgment in favor of Appellants.

CONCLUSION

For the reasons articulated above, the final judgment of the district court is REVERSED, and judgment is RENDERED in favor of Appellants.