# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 7, 2020

Lyle W. Cayce
Clerk

No. 19-60364

Meaghin Jordan, *Individually and, on behalf of their minor son*, Braylon Jordan; Jonathan Jordan, *Individually and, on behalf of their minor son*, Braylon Jordan,

*Plaintiffs—Appellants*,

*versus*

Maxfield & Oberton Holdings, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:15-CV-220

Before Stewart, Clement, and Costa, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

At twenty-two months old, Braylon Jordan suffered terrible injuries after ingesting eight Buckyball magnets. Meaghin and Jonathan Jordan, Braylon's parents, sued Maxfield & Oberton Holdings, L.L.C. ("M&O") for manufacturing and distributing Buckyball magnets in the United States. After an eight-day trial, the jury returned a verdict for M&O. The Jordans moved for a new trial and for relief from judgment. The district court denied both motions. We AFFIRM.

No. 19-60364

## I. Facts and Procedural History

In 2009, M&O manufactured and distributed Buckyball magnets, small neodymium magnets[1] that can be manipulated into various shapes. Prior to 2010, Buckyball magnets were labeled as appropriate for children ages 13 and up. In 2010, the Consumer Product Safety Commission ("CPSC") recalled Buckyball magnets to clarify the magnets' labels pursuant to the Consumer Product Safety Improvement Act of 2008. The Act adopted the American Society for Testing Materials ("ASTM") standard F963, which imposed strength limits on magnets designed, manufactured, or marketed for children under age 14. Magnets for children under age 14 were prohibited from exceeding 50 Gauss.[2] Prior to the CPSC's recall, Buckyball magnets did not comply with standard F963 because they were marketed to children ages 13 and up and exceeded the 50 Gauss level.

After the recall, M&O worked with the CPSC to change Buckyball magnet labels to indicate that the magnets were not intended for children of any age. The new label appeared on Buckyball magnets in 2011 and warned that they were to be kept away from all children and could cause serious injury or death if swallowed or inhaled.

In March 2011, the Jordans purchased a set of Buckyball magnets (featuring the new label) from Diamondhead Pharmacy and Gift Shop in Diamondhead, Mississippi. On April 2, 2012, Braylon became very sick and vomited throughout the night. His parents took him to an urgent-care facility, and he was later transferred to a hospital. An x-ray revealed that Braylon had swallowed eight Buckyball magnets, causing major damage to his stomach

---

[1] Neodymium magnets are magnets composed of the rare-earth metal neodymium, and they are the strongest type of permanent magnets that are commercially available.

[2] A "Gauss" is the unit of measurement of magnetic induction.

and intestines. Jonathan Jordan testified that they ordinarily stored the Buckyball magnets outside of Braylon's reach, but Braylon may have found some loose magnets underneath the couch.

On March 24, 2015, the Jordans filed suit against M&O. The Jordans asserted several claims against M&O under Mississippi state law, including product liability claims for failure to warn and defective design. They also asserted fraudulent transfer, civil conspiracy, and federal and state Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against M&O and its insurers. The district court bifurcated the claims and held a separate trial on those for product liability.

Despite pleading both failure to warn and defective design claims, the Jordans only argued the defective design claim at trial. Under the Mississippi Product Liability Act ("MPLA"), a claimant must demonstrate that the product was defective "at the time the product left the control of the manufacturer, designer or seller." MISS. CODE ANN. § 11-1-63(a) (2014). Claimants must also show that "[t]he manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought." *Id.* at § 11-1-63(f)(i). "The [MPLA] speaks only of dangers known as of the time the product leaves the control of the manufacturer or seller." *Noah v. Gen. Motors Corp.*, 882 So.2d 235, 239 (Miss. Ct. App. 2004).

Before trial, M&O submitted a motion in limine to exclude evidence that post-dated the Jordans' Buckyball purchase ("post-sale evidence"). M&O argued that post-sale evidence was irrelevant because it did not reflect what M&O knew when the Jordans purchased the Buckyball magnets. M&O sought to exclude all mention of the CPSC's subsequent regulation of rare-earth magnets and its administrative actions against M&O. In July 2012 (more than a year after the Jordans' Buckyball purchase), the CPSC

No. 19-60364

designated Buckyballs and all other rare-earth magnets as "substantial product hazards." The CPSC sued M&O in an administrative enforcement action and recalled all Buckyball magnets later that year. In 2014, the CPSC adopted a mandatory safety standard for magnets that effectively banned the sale of Buckyballs and other rare-earth magnets. M&O hoped to exclude evidence of these proceedings and related proceedings between the CPSC and Zen Magnets, M&O's chief competitor.

The Jordans opposed M&O's motion in limine and sought to introduce various pieces of post-sale evidence. They sought to introduce July 2012 correspondence between the CPSC and Alan Schoem, M&O's attorney, where the CPSC discussed the risk of swallowing Buckyball magnets and its investigation into M&O. They also sought to introduce the CPSC's July 2012 Administrative Complaint against M&O, the CPSC Hazardous Magnet Rule Briefing Package (a proposal related to the mandatory safety standard the CPSC adopted in 2014), and the CPSC's Amended Responses to Requests for Admissions in its administrative action against M&O.

The district court granted the motion in limine in part and excluded most post-sale evidence. The district court allowed the Jordans to introduce a post-sale study that one of their medical experts relied on, but the court otherwise instructed the parties to "stick to the MPLA and avoid any risk of retrying this case at great expense and inconvenience." *Jordan v. Maxfield & Oberton Holdings L.L.C.*, No. 3:15-CV-220 (S.D. Miss. June 18, 2018) (order granting motion in limine in part and denying in part). Notwithstanding the

No. 19-60364

motion in limine, the Jordans did use some post-sale evidence to cross-examine witnesses.[3]

Through the beginning of trial, the Jordans argued that Buckyball magnets were children's toys and were defectively designed under the MPLA. On the fifth day of trial, the Jordans asked the district court to give the jury a preemption instruction, arguing that the 2008 Consumer Product Safety Improvement Act incorporated ASTM F963 and partially preempted state law. Counsel for the Jordans argued that ASTM F963 (requiring that magnets not exceed 50 Gauss) could be used to determine the magnet defect and that the jury could render a verdict for the Jordans if it concluded that Buckyball magnets exceeded 50 Gauss. The district court denied the Jordans' request for the preemption jury instruction.

After an eight-day trial, the jury returned a verdict in favor of M&O. The Jordans moved for a new trial under FED. R. CIV. P. 59(a) on all issues. The Jordans also moved for relief from the final judgment under FED. R. CIV. P. 60(b)(3). The district court denied both motions, and the Jordans appealed. The Jordans' notice of appeal lists many rulings that they now contest. We review their claims through the lens of the Rule 59 and Rule 60 motions.

## II. Discussion

On appeal, the Jordans first argue under Rule 59 that the district court's exclusionary rulings prevented them from presenting their case and

---

[3] During the cross-examination of Alan Schoem, the Jordans used a September 2011 (and therefore post-sale) email from the CPSC about M&O's corrective action plan. The email was not admitted into evidence, but the Jordans showed it to Schoem and questioned him about it. They also cross-examined Nancy Nord with the August 2012 CPSC briefing package on hazardous magnet materials and the CPSC's Amended Responses to Requests for Admissions.

No. 19-60364

cross-examining M&O's witnesses. Next, the Jordans argue under rule 60 that the exclusion of post-sale evidence allowed M&O to misrepresent the facts at trial. Lastly, they argue under Rule 59 that the district court's denial of their request for a preemption instruction warrants a new trial. We agree with the district court's denial of relief on all issues.

*a. Rule 59 motion*

The Jordans argue for a new trial based on the district court's grant of the motion in limine and bench rulings that excluded post-sale evidence. They argue that the district court's rulings prevented them from fully presenting their case. We disagree.

The district court denied the Jordans' motion for a new trial under Rule 59, and we review the denial of that motion for abuse of discretion. *Benson v. Tyson Foods, Inc.*, 889 F.3d 233, 234 (5th Cir. 2018).

After a jury trial, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). A court may grant a new trial when there is an erroneous evidentiary ruling at trial. *See Willitt v. Purvis*, 276 F.2d 129, 132 (5th Cir. 1960) (affirming the district court's grant of a new trial when evidence was erroneously adduced at trial). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)).

The Jordans allege that the exclusionary rulings constituted prejudicial error because the rulings prevented the Jordans from fully presenting their case and cross-examining M&O's witnesses. A central issue at trial was whether Buckyball magnets were children's toys or adult

products, and the Jordans argue that they were unable to fully present their case on this issue. M&O's witnesses testified that the CPSC determined that Buckyball magnets were adult products. M&O designated Nancy Nord, a former CPSC commissioner, as an expert witness in the areas of the Consumer Product Safety Act, the CPSC, and the CPSC's procedures. Nord testified that the CPSC did not believe that Buckyball magnets were children's toys in 2010 because the CSPC did not regulate them under the more-stringent children's toy standard. According to Nord, if the CPSC did consider Buckyball magnets children's toys when it issued its 2010 recall, Buckyballs would have been subjected to heightened safety, tracking, and warning requirements. She testified that the less onerous labeling change required by the CPSC in 2010 reflected the CPSC's position that Buckyball magnets were adult products rather than children's toys.

The Jordans argue that they should have been able to counter Nord's testimony by introducing post-sale evidence of the CPSC's 2012 regulatory and administrative actions against M&O. Their evidence showed that in 2012, the CPSC began regulating Buckyball magnets as children's toys (and therefore subjecting the product to the heightened safety, tracking, and warning requirements.) The Jordans' brief states that they withdrew the July 2012 correspondence between the CPSC and M&O's attorney after the court granted M&O's motion in limine and that this prevented them from fully presenting their case.

Though the Jordans argue that the district court's ruling deprived them of vital evidence, the MPLA requires claimants to prove defect based on what the manufacturer knew *at the time the product was sold*. MISS. CODE ANN. § 11-1-63(a) (emphasis added); *see Noah*, 882 So.2d at 239 (discussing a manufacturer's duties owed at the time of sale). The MPLA makes it clear that M&O's conduct should only be evaluated through March 2011 for the purposes of the Jordans' lawsuit. Evidence of the CPSC's 2012 regulation of

M&O may have cast M&O in a different light at trial, but this fact does not compel the admission of evidence that was properly excluded. Thus, the Jordans have not demonstrated that the district court's exclusion of post-sale evidence was prejudicial error.

While it is true that the pretrial motion in limine limited the Jordans' ability to launch directly into post-sale evidence at trial, it is not true that the motion wholly prevented the Jordans from later admitting post-sale evidence. Even though the motion in limine initially excluded post-sale evidence, nothing prohibited the Jordans from seeking to revisit that ruling later. Though the record indicates that the Jordans contemplated asking the district court to reconsider its ruling on the motion in limine, they never did.[4]

The Jordans rely on *Muzyka v. Remington Arms Co., Inc.* for the proposition that denying a party's request to use subsequent remedial measures as impeachment evidence affects a party's substantial rights and warrants reversal. 774 F.2d 1309, 1313 (5th Cir. 1985). *Muzyka* does not support the Jordans' argument.

In *Muzyka*, Muzyka sued Remington after a rifle discharged a bullet due to a malfunction with the rifle's bolt-lock safety. *Id.* at 1310. The district court granted Remington's motion in limine to exclude evidence of a subsequent redesign of the rifle pursuant to FED. R. EVID. 407. *Id.* When Remington's witness testified that the earlier design was "maybe the best production rifle ever designed in the world," Muzyka asked the court to reconsider the motion in limine. *Id.* at 1310–12. The district court denied Muzyka's request. We reversed and held that the evidence that Remington changed the design shortly after Muzyka's accident should have been

---

[4] At trial, the Jordans' counsel stated that "we may ask the court . . . to revisit the court's ruling regarding the exclusion of the other CPSC matters."

admitted for impeachment purposes. *Id.* at 1313. We further held that the district court's error in excluding the evidence was not harmless. *Id.* at 1313–14.

The Jordans' reliance on *Muzyka* is misplaced. The Jordans indicated that they *might* ask the district court to reconsider its ruling on the motion in limine, but they stopped short of actually asking the court to reconsider. *Muzyka* is therefore distinguishable.

Even assuming *arguendo* that the Jordans were justified in not attempting to revisit the court's ruling on the motion in limine, *Muzyka* still does not control the outcome of this case. The evidence erroneously excluded in *Muzyka* was directly relevant to the quality of the weapon that injured the plaintiff and whether the weapon's design was improper. 774 F.2d at 1310–1313. Here, the evidence that the Jordans sought to introduce is made immaterial by the terms of the MPLA. *See* § 11-1-63(a) (discussion of a manufacturer's duties at the time of sale). Evidence of post-sale information may therefore be properly excluded due to its potential prejudicial effect. S*ee Noah*, 882 So.2d at 239 ("Under the circumstances, admission of the prior incident reports occurring after the date of sale would likewise have been more prejudicial than probative.").

In sum, the district court did not commit prejudicial error by granting the motion in limine and otherwise excluding post-sale evidence at trial. We thus hold that the district court did not abuse its discretion in determining that the Jordans failed to demonstrate that its evidentiary rulings constituted prejudicial error.

### b. Rule 60 motion

The Jordans next argue that the district court erred in denying their motion to set aside the final judgment because the judgment was obtained through M&O's misrepresentations. *See* FED. R. CIV. P. 60(b)(3). They

argue that the district court's exclusion of most post-sale evidence allowed M&O to misrepresent the facts at trial and rendered them unable to rebut M&O's case. Again, we disagree.

We review the district court's denial of a motion for relief from judgment under Rule 60(b) for abuse of discretion. *In re Deepwater Horizon*, 934 F.3d 434, 446 (5th Cir. 2019) . To obtain relief under Rule 60(b)(3), the moving party must demonstrate that the misrepresentation prevented the movant from fully and fairly presenting his case. *In re DuPuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 790 (5th Cir. 2018). Movants are not required to prove that the misrepresentation was outcome determinative. *Id.* Reversal is warranted when movants show that their opponent's misrepresentation "foreclosed potentially promising cross-examination tactics." *Id.*

The Jordans allege that the evidentiary rulings allowed M&O to create misleading narratives that the CPSC considered Buckyball magnets adult products (discussed *supra*) and that expert witness Nord was an unbiased expert on the CPSC. Nord testified that the CPSC determined Buckyball magnets were not children's toys and that the CPSC  Staff agreed to M&O's corrective action plan. The Jordans were aware of several articles[5] that Nord had authored favoring M&O in its ongoing dispute with the CPSC, but all the articles post-dated the Jordans' Buckyball purchase (and may have been excluded by M&O's motion in limine). During voir dire, the Jordans asked Nord about her relationship with M&O. Nord did not answer the question. She stated that she could probably answer the question but was "a little

---

[5] Nord authored several articles that criticized the CPSC for its regulation of Buckyball products. Among her writings was a Wall Street Journal piece titled "The Irrational Federal War on Buckyballs" and another piece on her personal blog titled "The Saga of Buckyballs—How Not to Regulate."

concerned that it [the answer to the question] might be subsequent to 2011." The Jordans did not ask the district court to instruct Nord to answer the question, and they did not ask her further questions on this point.

The Jordans cite to several articles, blog posts, and speaking engagements that reflect Nord's involvement with M&O. Though the Jordans had access to much of this information at trial, the Jordans conceded at oral argument that they did not proffer this evidence to the court as bias evidence. In their motion for a new trial, the Jordans provided the district court with full evidence of Nord's alleged bias for the first time.

Federal Rule of Evidence 103(a)(2) requires parties to proffer excluded evidence to the court unless the "substance was apparent from the context." The Jordans do not argue that the substance of their bias evidence against Nord was apparent from the context, so they were required to proffer this evidence to preserve the alleged error on appeal. *See* FED. R. EVID. 103(a)(2). The Jordans failed to proffer evidence of Nord's alleged bias, so the district court was unable to rule on the evidence's admissibility. Therefore, we cannot review the exclusion of this evidence. *See United States v. Vitale*, 596 F.2d 688, 689–90 (5th Cir. 1979) ("Under the law of this circuit, the propriety of a decision to exclude evidence will not be reviewed if an offer of proof was not made at trial.").

The Jordans further rely on *In re DePuy Orthopaedics* in support of this argument, but that case is inapposite. In that case, we reversed the district court's denial of the defendants' Rule 60(b)(3) motion because the plaintiffs' counsel concealed payments to their expert witnesses. 888 F.3d at 788 (5th Cir. 2018). At trial, the plaintiffs used two experts and repeatedly argued that the experts were unbiased because they were not being compensated (unlike the defendants' compensated experts). *Id.* at 788–89. In fact, both plaintiffs' experts were compensated for testifying, and plaintiffs failed to disclose this

information at trial. *Id.* at 789, 791. We held that the plaintiffs' misrepresentations deprived the defendants of the opportunity to fully examine the plaintiffs' witnesses as paid experts. *Id.* at 792. We reversed because the defendants demonstrated by clear and convincing evidence that the plaintiffs' misrepresentations prevented them from fully and fairly presenting their case. *Id.* at 790.

Here, M&O did not conceal information about Nord from the court or the Jordans at trial. On the contrary, the bias evidence relied on by the Jordans was publicly available. The Jordans had this information at trial but failed to proffer this evidence. Because the Jordans failed to proffer this evidence, the district court was unable to rule on the evidence's admissibility in the first instance. Thus, the district court did not err.

### c. Preemption Jury Instruction

The Jordans requested a new trial on the additional ground that the district court improperly denied their request for a jury instruction. They sought an instruction that the federal magnet standard (ASTM F963, requiring magnets for children to be no stronger than 50 Gauss) preempted state law on the defect element of their claim. At the pretrial conference, the Jordans did not present preemption arguments or indicate that they were pursuing a preemption claim. On the fifth day of trial, the Jordans requested a preemption jury instruction and argued that the federal magnet standard provided a rule of decision in the case.[6] They sought an instruction that the

---

[6] Preemption is an odd label for plaintiff's proposed instruction because federal preemption of a state law tort claim would mean a plaintiff cannot assert the state claim. *See, e.g., Kurns v. Railroad Friction Prods. Corp.*, 565 U.S. 625 (2012) (holding that Locomotive Inspection Act prevented plaintiff from pursuing a state-law design defect claim). That is why it is typically defendants who assert preemption. *See id.* The Jordans seem to be arguing not that their design defect claim is displaced by federal law (that is,

jury could find that Buckyball magnets were defective under the MPLA using the federal magnet standard.

Though the Jordans arguably never requested to amend the pretrial order to include their preemption claim, we will treat their request for a jury instruction as a request to amend the pretrial order *arguendo*. We review a district court's decision denying a motion to amend a pretrial order for abuse of discretion. *See Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345 (5th Cir. 2002). "Because of the importance of the pretrial order in achieving efficacy and expeditiousness upon trial in the district court, appellate courts are hesitant to interfere with the court's discretion in creating, enforcing, and modifying such orders." *Id.* (quoting *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982)).

Federal Rule of Civil Procedure 16 states that a court may only modify a pretrial order issued after a final pretrial conference "to prevent manifest injustice." FED. R. CIV. P. 16(e). "[A]n amendment of a pretrial order should be permitted where no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight." *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003) (quoting *Sherman v. United States*, 462 F.2d 577, 579 (5th Cir. 1972)).

It would not be reasonable to conclude that there would have been no injury to M&O if the court permitted the Jordans to amend the pretrial order during trial. M&O's trial strategy centered on rebutting the Jordans' MPLA claim, and M&O did not conduct discovery on the preemption issue. The

---

preemption), but that a violation of the federal magnet standard would help them establish a design defect to support their state claim.

No. 19-60364

prejudice to M&O may have been great if the Jordans were able to surprise them with the preemption claim at trial.

We also do not agree with the Jordans that they suffered injustice (let alone, manifest injustice) when the district court declined to amend the pretrial order. Manifest injustice generally does not result where a party requests to amend based on evidence that the party knew about at the time of the pretrial conference. *See Trinity Carton Co., Inc. v. Falstaff Brewing Corp.*, 767 F.2d 184, 192 n.13 (5th Cir. 1985) ("Even though amendment of the pretrial order may be allowed where no surprise or prejudice to the opposing party results, where, as here, the evidence and the issue were known at the time of the original pretrial conference, amendments may generally be properly refused."). The Jordans knew or should have known about the federal magnet standard and the preemption argument at the time of the pretrial conference. Because they did not mention the claim at the pretrial conference, there was no injustice when the district court denied their belated request for a jury instruction.

Lastly, it is not true that amending the pretrial order during trial would have come at little inconvenience to the court. Amending the pretrial order at that stage would have been grounds for a continuance or even a mistrial and could have caused both the district court and the parties great inconvenience. Therefore, the district court did not err in denying the Jordans' request for a preemption jury instruction.

## III. Conclusion

For the foregoing reasons, the district court's denial of the Jordans' motion for a new trial and motion for relief from judgment is AFFIRMED.